IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

FILED
SEP 24 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

Frank Dominic Dundee,
    Plaintiff

CASE NO. 1:19CV01141

-vs-

JUDGE DAN AARON POLSTER

Danialle Lynce, et al.,
    Defendant(s)

# PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY HOSPITALS HEALTH SYSTEMS INC. MOTION TO DISMISS INDIVIDUAL DEFENDANTS

NOW COME Plaintiff Frank Dominic Dundee, pro se litigant, by and through his own counsel, hereby move this Honorable Court to dismiss University Hospitals Health Systems Inc. Motion to Dismiss Individual Defendants. A Brief in Support is attached hereto.

Respectfully submitted

*(signature)*
Frank Dominic Dundee
Pro Se Litigant
7707 Amberwood Trail
Boardman, Ohio 44512
Telephone: 330-398-8274
Facsimile: 330-726-2662
Email: fdundee@gmail.com

## BRIEF IN OPPOSITION OF MOTION TO DISMISS/INDIVIDUAL LIABILITY

### I.  INTRODUCTION

The Plaintiff comes before the court with a complaint that includes enough facts to support his allegations and set forth a claim upon which relief may be granted as a matter of law.  The Defense argues that the very people responsible for the actions and animus that have led to the violation of the Plaintiff's rights under Title VII and the ADA, should not only have immunity in this claim, but should be able to continue to operate with impunity against any of the 28,000 employees in the University Hospitals system. The defendants in this complaint need to be held accountable for their actions, not only as an example to others in the University Hospitals managerial hierarchy, but also as an example to employers across the country that a toxic culture that flaunts EEO law is unacceptable and punishable.

Plaintiffs, in this case and others, look for impartial justice, but encounter a system that puts them on trial.  Firms respond to discrimination complaints with managerial harassment and HR efforts to document employment infractions. This documentation becomes the bedrock of the firm's defense, as both managers and HR are trained by their defense lawyers to dispose of and vilify employees who raise the specter of discrimination charges, as is demonstrated in the Plaintiff's complaint against Ms. Danialle Lynce, Mr. Jason Glowczewski, Mr. Shawn Osborne, Ms. Rachael Lerman and the culture of complicity within the University Hospitals system.

2

## I.     LAW AND ARGUMENT

Christopher Greer, writing in the Fordham Law Review, says that to further advance the goals of Title VII and the ADEA, and to accomplish the purposes which Congress intended through the statutes, the "and any agent" language in the statutes' definitions of "employer" should be read, not as ensuring that individuals who discriminate can escape liability, but rather as ensuring that individuals who act within their supervisory positions to render discriminatorily motivated decisions are held accountable for those acts.

In Hamilton v. Rodgers, the Fifth Circuit held that not only was the employer (the fire department) itself liable for discrimination under Title VII under respondeat superior, but its individual employees and immediate supervisors as its agents were also liable. In Hamilton, an employee brought a Title VII action against the fire department and several supervisors alleging racial harassment and retaliation. The court noted that "[t]he definition of 'employer' is... broad, including agents of the actual employer.'" Thus, Title VII "'should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination.' "I' Indeed, according to the court, "[t]o hold otherwise would encourage supervisory personnel to believe that they may violate Title VII with impunity. Consequently, it extended liability to Hamilton's immediate supervisors, "despite their intermediate standing within the [d]epartment's hierarchy," because they had authority over staffing, assignment, and other employment decisions which formed the basis of the discrimination.

3

Other courts have also held individuals liable under Title VII. For example, in Kolb v. Ohio, Department of Mental Retardation & Development Disabilities, the court held that individuals may be liable for intentional discrimination in the workplace." In Kolb, the plaintiff brought charges against her employer and three individual supervisors for twice failing to promote her, for discharging her on the basis of her race and sex, and for retaliating against her for past charges of discrimination. The court rejected the individual defendants' summary judgment motions stating: 'Holding responsible those who control the aspects of employment accorded protection under Title VII is consistent with the congressional intent both that the Act's effectiveness not be frustrated by an employer's delegating authority ... and that the Act be interpreted liberally in order to achieve its remedial purpose of eradicating discrimination in employment.' The court concluded that "those individuals who are charged with the responsibility of making and/or contributing to employment decisions for the defendant employer may be liable as its agents under Title VII."

Similarly, in McAdoo v. Toll, the court held that agents of a University were individually liable for discrimination.' In McAdoo, a black woman sued a University and its Chancellor, President, Department Deans and Department Heads, for failing to uphold its job offer because of her race. The court denied the defendants' motion for summary judgment, and held them individually liable.

The McAdoo court relied upon, among other cases, Dague v. Riverdale Athletic Association, which rejected the individual defendants' claim that they were not "employers" within the statutory definition of Title VII. The Dague court said that the defendants failed to explain why officers of an organization should be treated any

4

differently from the organization's agents, who are clearly subject to liability under the Act. Furthermore, the court found it inconceivable that Congress could have intended to relieve from liability the very persons who engaged in the discriminatory acts.

Courts have also held individuals liable in ADEA actions. In Shager v. Upjohn Co. the Seventh Circuit reversed a lower court's grant of a summary judgment motion in favor of the employer, finding that an intentional act of an employee performed within the scope of his authority is an act of the employer and is properly imputed to the employer under respondeat superior. The court implied that individual supervisors should also be held liable under the ADEA. It stated that the statutory language could mean that [the supervisor] is liable along with [the employer], or even possibly instead of [the employer].

In Wanamaker v. Columbian Rope, Co., the court expressly held that individuals who exercise control over a particular employee may be held individually liable for discrimination under the ADEA. In Wanamaker, the plaintiff claimed that during his interview for a position as in-house counsel for the defendant company, he received verbal assurances that it would be a "career position." After thirteen years, however, he was terminated. He claimed this violated the ADEA, citing as evidence the directors' and officers' stated desires for "new blood" and "youngblood." The court determined that "corporate officers and directors may be individually liable for violations of the ADEA if they exercise control over an employee.

Similarly, in House v. Cannon Mills Co., the court found the defendants individually liable for violations of the ADEA, even though they were not high ranking officers or shareholders. Because the defendants had authority over the discriminatory acts that

5

resulted in the plaintiff's discharge, the court found that they were 'agents' and 'employers' within the express language of the statute. Furthermore, because the existing scope of relief under the ADEA is much broader than that under Title VII, and because the ADEA incorporated much of the FLSA, which imposes personal liability on all "employers," the defendants were held liable under the ADEA. As there are conflicting interpretations among different circuits and different districts that have considered the issue of individual liability under Title VII and the ADEA, there are conflicting interpretations within district courts as well.

In Bridges v. Eastman Kodak Co.," the court found that the "[c]ases in this Circuit ... appear to assume that both individual and official liability can be imposed under Title VII.'" In Bridges, three women alleged constructive discharge due to sexual harassment under Title VII. Without reference to Friend, which had been decided before the 1991 Amendments, the court followed Second Circuit cases which assumed that individual liability could be imposed. It declined to read Title VII narrowly, especially in light of the 1991 Amendments providing compensatory and punitive damages.8 7 Instead, it noted that compensatory and punitive damages are payable by individuals, and that the cases interpreting Title VII narrowly were decided before the 1991 Amendments. It concluded, therefore, that individual liability should be imposed.

Several courts adopting this view have imposed individual liability under Title VII. This view is consistent with congressional intent that Title VII "eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination."

The 1991 Amendments further clarify the purpose of Title VII and support holding individuals liable. Specifically, in the "findings and purposes" of the 1991 Amendments,

6

Congress noted the need for additional remedies and protections to eradicate discrimination and harassment in the workplace, and the need to expand the scope of the statute. Accordingly, Section 102(a)(1) of the 1991 Amendments provides that "the complaining party may recover compensatory and punitive damages" from those who intentionally discriminated. As the Bridges court recognized, these are the types of damages individuals would and could be expected to pay. Imposing liability on such individuals for their own acts of intentional discrimination corresponds with Congress's desire to provide increased remedies and protections under Title VII to the victims of employment discrimination and harassment.

In adopting the 1991 Amendments, Congress sought to strengthen Title VII's protections and remedies " by legislatively overturning several Supreme Court decisions that had limited Title VII protections.

Thus, the 1991 Amendments sought to reinstate the previous scope and effectiveness of the civil rights laws and to expand remedies to more adequately compensate victims and deter unlawful discrimination. Accordingly, the 1991 Amendments provide remedies for previously unrecoverable injuries. These remedies "not only reflect the continuing congressional belief in the principles of Title VII; they also reflect the gradual development and societal commitment to the national policy against discrimination and Congressional intent to support liberal interpretation and application of the civil rights laws. Finding individual liability under Title VII, therefore, corresponds with a broad interpretation of the statute.

Some may argue, however, that individual liability is inapplicable under both Title VII and the ADEA because the prospect of potentially debilitating judgments against those

7

found individually liable may make courts less likely to find discrimination than if the corporate entity with deep pockets and/or hefty insurance coverage were being burdened with the damages. This result, however, is not likely. Compensatory and punitive damages are awarded only when the conduct complained of is egregious. Presumably, these damages will not be awarded where the conduct does not so merit and a finding of a Title VII violation should not depend on the size of the damage award or who is paying it. Moreover, Title VII imposes limits on the amount of punitive damages that may be awarded, ranging from $50,000 to $300,000 further protecting the individual from excessive awards.

Another potential argument against individual liability is that supervisors may become reluctant to fire or not promote employees because of fears that Title VII or ADEA actions will be brought against them individually. If, however, the employment action is legitimate, such fears are unwarranted, because justified dismissals or non-promotions have not, do not, and will not lead to a finding of liability for either the employer or the supervisors. Failure by the plaintiff to prove his dismissal was due to unlawful discrimination would preclude a finding in his favor, as the imposition of individual liability does not alter the plaintiff's burden of proof.

Although the cause of action adds little to most employment claims, the cause of action for Intentional Infliction of Emotional Distress (IIED) provides a means of suing an individual defendant. The elements of an IIED claim are the defendant engaged in outrageous conduct; the conduct was intentional; and the conduct caused severe emotional distress. These elements are fully present and caused by the defendants' actions in the Plaintiff's discrimination and harassment claim.

Furthermore, because the statutes were originally intended to eliminate employment discrimination and, in the case of Title VII, later amended to strengthen that aim, they should be liberally and flexibly construed to meet that goal. A reasonable and faithful interpretation of the statutory language would, therefore, impose liability where it belongs: on those, like the defendants, who discriminated against the Plaintiff, possibly with the full knowledge and approval of higher-ups at UH. If the Court allows the individual defendants' release prior to discovery, the complicity of the UH hierarchy may never be revealed, thus impeding justice for Plaintiff and once again giving a green light to employer discrimination.

Conclusion

Based on the foregoing, the Plaintiff respectfully requests that this Court holds the Individual Defendants, Danialle Lynce, Jason Glowczewski, Shawn Osborne and Rachael Lerman, responsible for all claims against them.

Respectfully submitted,

Frank Dominic Dundee

Pro Se Litigant

7707 Amberwood Trail

Boardman, Ohio 44512

Telephone: 330-398-8274

Facsimile: 330-726-2662

Email: fdundee@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2019, a true and correct copy of Plaintiff's Opposition of Defendant University Hospitals Health Systems, Inc. Motion for Judgment on the Pleadings was served:

Via Regular U.S. Mail, postage prepaid, upon the following Parties:

Donald C. Bulea

GIFFEN & KAMINSKI, LLC

1300 East Ninth Street, Suite 1600

Cleveland, Ohio 44114

Frank Dominic Dundee

Pro Se Litigant