IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Frank Dominic Dundee, <br> Plaintiff <br><br> -vs- <br><br> University Hospitals Health System, Inc., <br> Defendant(s) | CASE NO. 1:19CV01141 <br><br> JUDGE DAN AARON POLSTER <br><br> FILED <br> OCT -7 2019 <br> CLERK, U.S. DISTRICT COURT <br> NORTHERN DISTRICT OF OHIO <br> YOUNGSTOWN |

## MOTION TO CERTIFY CLASS AND MEMORANDUM IN SUPPORT

This case is about unlawful, employer mandated medical examinations, imposed unilaterally, regardless of situation, that are part and parcel of the University Hospitals Health System's policy and procedures; these policies and procedures have been in effect from at least 2003 to this date, discriminating against hundreds or more employees over the time period, violating their rights under the ADA. The named Plaintiff is the person who has brought a claim against University Health Systems, Inc., for these violations of the ADA upon which relief may be granted as a matter of law. On behalf of the many other individuals subjected to Defendant's policy of mandatory medical examinations, in violation of the ADA, the named Plaintiff challenges in this action the unlawful policies and practices of University Hospitals Health System, Inc.. Through this motion and memorandum in support, the named Plaintiff respectfully moves the Court to certify this action and the proposed class discussed below.

1

I. **DISCUSION**

Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117, makes it unlawful for an employer to "require a medical examination" or to "make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Id. § 12112(d)(4)(A). According to the Equal Employment Opportunity Commission ("EEOC"), this means that an employer should not make disability-related inquiries or require a medical examination of an employee unless the employer "has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition. In addition, the courts have pointed out the dangers of requiring an employee to undergo a medical examination based on the subjective observations of a nonmedical supervisor, such as a supervisor of HR representative, EEOC v. McLeod Health, Inc., No. 17-2335, 2019 WL 385654 (4th Cir. Jan. 31, 2019).

In Painter v. IDOT, the Seventh Circuit's decision began by noting an employer's high burden of establishing that compelled medical examinations are job-related and consistent with business necessity, stating that "a medical examination is job related and consistent with business necessity if the employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform the essential job functions or that the employee will pose a threat due to a medical condition." Simply being "annoying" or "inefficient" would not justify an examination.

The United States Court of Appeals, Sixth Circuit, in Bates vs. Dura Automotive, an employer's emphasis on a diagnostic purpose aligns with the EEOC definition of medical-examination and links that term to its sister term, disability inquiries. See DRI & ME Guidance (looking to whether the "procedure or test . seeks information about an individual's physical or mental impairments or health"); 42 U.S.C. § 12112(d)(4)(A) (prohibiting medical examinations and inquiries "as to whether such employee is an individual with a disability or as to the nature or severity of the disability"). The **"uncovering of [health] defects at an employer's direction is the precise harm that § 12112(d)(4)(A) is designed to prevent."** Kroll, 691 F.3d at 819.

### A.     UNIVERSITY HEALTH SYSYTEMS, INC. POLICY

University Hospitals Health Systems, Inc., in their Policy and Procedure handbook, has explicitly adopted, under HR-85-Employee Assistance Program (EAP), subheading 4.2 Mandatory Referral (copy attached), a policy in which the employee's supervisor's subjective opinion is the sole criteria needed to mandate that the employee meet with an EAP counselor, including a 3 hour psychiatric examination, comply with all EAP counselor recommendations, all of this under threat of termination. This policy of mandatory EAP counseling sessions and mandatory psychiatric examinations, is policy for all 28,000 employees across all UH campuses. The policy has been in effect since at least 2003 and remains unchanged to this moment, despite UH being made aware the "required" EAP counseling sessions constitutes a medical exam under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117

The Courts have decided in Kroll v. White Lake Ambulance, No. 13-1774 (6th Cir. Aug. 19, 2014), EEOC v. McLeod Health, Inc., No. 17-2335 (4th Cir. 2019), Bingman v. Baltimore County, 4th Cir., No. 17-1525, Hannah P. v. Coats, No. 17-1943 (4th Cir. Feb. 19, 2019), that employers must have their "ducks in a row" to make sure any required counseling is job-related and consistent with business necessity.

Generally, employers should have sound and documented justification that explains why a medical exam is needed for an employee to perform his or her job. Thus, any decision to send an employee for counseling now must be carefully scrutinized. UH, by having a mandatory policy, within their progressive discipline process, that results in an automatic referral into EAP counseling, reveals an "institutional perception" that assumes the employee must have issues, mental or physical, that require counseling by an EAP counselor. The UH mandatory policy of EAP counseling thus ignores EEOC law concerning "perceived disabilities" as well as EEOC law on allowable medical examinations.

Generally speaking, the ADA protects individuals who meet the act's definition of being "disabled." Individuals may be considered "disabled within the meaning of the Act" and therefore qualify for ADA protection in three circumstances: if the individual (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "being regarded as having such an impairment (as described in paragraph (3)." 42 U.S.C. 12102(1). But an employee need not be disabled in order to benefit from the medical examination provision. Subsection (d)(4) protects all employees from medical inquiries, regardless of whether they have a qualifying disability. UH's policies disregard the ADA protections.

4

### III. The Proposed Classes Satisfy the Requirements of Rule 23(A)

Plaintiffs seeking class certification must meet four requirements under Rule 23(a): first, the class must be so numerous that joinder of all members would be impracticable; second, there must be questions of law or fact common to the class; third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and fourth the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). As discussed below, the proposed classes meet these prerequisites—known respectively as numerosity, commonality, typicality, and adequacy. Since the Plaintiff is a Pro Se litigant, it will be left to the court to appoint representative legal counsel to the plaintiff class

#### A. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." In determining class size, the exact number of potential members need not be shown. Joseph v. General Motors Corp., 109 F.R.D. 635, 639 (D. Colo. 1986). However, classes have been certified with as few as 17 to 46 class members. See Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 275-76 (10th Cir. 1977) (trial court erred in denying class certification on numerosity grounds where class consisted of between 41 and 46 persons); Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978) (noting that "[c]lass actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class"). Since the discriminatory policy of UH has been in place since at least 2003, and since UH has upwards of 27,000 employees, numerosity is met by the Plaintiff's claim against UH.

### B. Commonality

The second Rule 23(a) requirement is that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) "requires only a single question of law or fact common to the entire class." D.G. ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1195 (10th Cir. 2010); J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1288 (10th Cir. 1999). The threshold for this requirement is usually satisfied when it can be demonstrated that class members have suffered similar injuries. See Wal-Mart Stores v. Dukes, 564 U.S. 338, 349–50 (2011) (commonality requires common factual or legal questions that "generate common answers apt to drive the resolution of the litigation" (emphasis omitted)). Since the question of law is the same in the Plaintiff's claim, commonality is met by the Plaintiff's claim against UH.

### C. Typicality

"[T]ypicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." Stricklin, 594 F.3d at 1199; see also Adamson 855 F.2d at 676 ("[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."); Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th Cir. 1975) ("It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory."); see also Payson v. Capital One Home Loans, LLC, No. 07-2282-JTM, 2008 WL 4642639, at *4 (D. Kan. Oct. 16, 2008) ("Typicality determines whether a sufficient nexus exists between the claims of the named plaintiffs and the class. Claims need not be identical to be typical." (citation omitted)). Typicality is met by the Plaintiff's claim since the UH policies and procedures in question apply the same harmful practices to all employees.

### D. Adequacy

Finally, it is clear that the Class representative will "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). The adequacy analysis encompasses two separate inquiries: "(1) do the named plaintiff (pro se litigant) have any conflicts of interest with other class members and (2) will the named plaintiff (pro se litigant) prosecute the action vigorously on behalf of the class?" The named Plaintiff is an adequate representative because he entirely shares his classmates' interests in establishing the illegality of Defendants' policies and practices concerning unlawful medical examinations under the ADA that are part and parcel of the UH discipline policy. The named Plaintiff is a member of the class he represents. His injuries arise from policies that all class members were subjected to, and his legal challenges to Defendants' policies are shared among the members of the respective class. There are no known material conflicts of interest among members of the proposed classes, all of whom have a similar interest in vindicating their constitutional rights in the face of their unlawful treatment.

### E. The Common Questions of Law and Fact Predominate

The Rule 23(b)(3) predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Dukes, 564 U.S. at 376. To determine predominance, the court must "characterize the issues in the case as common or not, and then weigh which issues predominate." CGC Holding Co., LLC v. Broad & Cassel, 773 F.3d 1076, 1087 (10th Cir. 2014). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." Seabron v. Am. Family Mut. Ins. Co., Civil Action No. 11-cv-01096-WJM-KMT, 2013 WL 3713652, at *7 (D. Colo. July 16, 2013) (citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136–40 (2d Cir. 2001)). Common questions of law and facts predominate the Plaintiff's claim.

7

### F. The Class Action Is a Superior Vehicle for Adjudicating This Dispute

Rule 23(b)(3) also considers whether class resolution is the superior mechanism for the fair and efficient adjudication of the controversy. Specifically, Rule 23(b)(3) requires courts to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." These factors overwhelmingly favor class adjudication of Plaintiffs' claims.

Finally, this class action does not present any insurmountable difficulties in management. The proposed Class is ascertainable from records already in Defendant UH's possession, and they are limited in geographic scope (unlike a nationwide, multi-district class containing millions of members). Indeed, requiring separate individual lawsuits would likely result in far greater manageability problems, such as duplicative discovery (including numerous depositions of the same officials and repetitive production of documents),repeated adjudication of similar controversies in this Court, and excessive costs. Judicial economy will therefore be better served.

### IV CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask this Court to certify the Classes described in this Motion.

Respectfully submitted

*[signature]*

Frank Dominic Dundee
Pro Se Litigant
7707 Amberwood Trail
Boardman, Ohio 44512
Telephone: 330-398-8274
Facsimile: 330-726-2662
Email: fdundee@gmail.com

9