IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
OHIO
EASTERN DIVISION

**FILED**

**OCT 29 2019**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

| | | |
|---|---|---|
| FRANK DOMINIC DUNDEE, | ) | CASE NO. 1:19CV01141 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | MAGISTRATE JUDGE JONATHAN D. |
| v. | ) | GREENBERG |
| | ) | |
| UNIVERSITY HOSPITALS | ) | **PLAINTIFF'S RESPONSE IN OPPOSITION** |
| CORPORATION, et al., | ) | **TO DEFENDANT'S COMBINED BRIEF IN** |
| | ) | **OPPOSITION TO PLAINTIFF'S MOTION** |
| Defendants. | ) | **FOR CLASS CERTIFICATION AND** |
| | ) | **MOTION TO STRIKE CLASS** |
| | | **ALLEGATIONS** |

NOW COMES the Plaintiff, pro se litigant, and, in response, hereby responds to the

Defendant's dispositive motion. Continuing a pattern, the Defense's current dispositive

motion is consistent with his other dispositive motions, as well as with his inaccurate

comments during the Case Management Conference; offering arguments that are crafted

from a tangential relationship to the facts behind the Plaintiff's Motion for Class

Certification. If the Defense counsel had received better briefing on the facts, he would

realize that the Plaintiff's Motion for Class Certification meets *every* requirement, with

mathematical precision, under both Local Rule 23.1 and also Federal Rule 23: (1) an

adequate class definition, (2) ascertainability, (3) numerosity, (4) commonality, (5)

typicality, (6) adequacy and (7) at least one of the requirements in Rule 23(b), namely: (a)

separate adjudications will create a risk of decisions that are inconsistent with or dispositive

of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

The Plaintiff's (Dundee's) Motion for Class Certification asks the Court to appoint Dundee to be class representative, *NOT* class counsel, as the Defense states in its dispositive motion. The Plaintiff asks that the Court appoint class counsel. The Plaintiff asks that the Court considers both requests in light of the three factors of the Mathews v. Eldridge balancing test, lest the members of the class be denied a citizen's right to due process.

## I.      The Plaintiff's Motion for Class Certification Meets Federal Rule 23 Requirements.

The Defense argues that the Motion for Class Certification doesn't meet the "typicality" or "commonality" requirement, stating that "there can be no "typical" referral to EAP because the way that each employee arrives to EAP could be different, their EAP experiences are different, and the outcomes for each employee are different."

The violation in question, under Title I of the ADA occurs, for *each* member of the class, by action of the referral, itself; *each* member of the class is "perceived" or "regarded" by their supervisor as disabled under HR-85, 4.2. There is no reasonable reading of the policy that can come to another conclusion. Once again, the conduct or performance problems that were the catalyst for the mandatory referral is irrelevant for *every* employee in the class.

Therefore, the Defense's argument regarding the lack of "typicality" and "commonality" are overwhelmed by the Plaintiff's argument to the contrary. Dundee and the class meet the tests of the class action requirements of Federal Rule of Civil Procedure 23(a):

2

- Dundee and all class members have "substantially (exactly) the same interest in this matter" with the "common question of law," in that Dundee, and all members of the class, are employees of UH who were "perceived" or "regarded as disabled" by their supervisor, which is the only criteria available under UH Policy and Procedure [HR-85-Employee Assistance Program, 4.2, Mandatory Referral] in *every* instance, for *every* class member, *regardless* of the conduct or performance problem, in violation of Title I of the ADA.

- Dundee and all class members were mandated, under threat of termination, into unlawful medical examinations, EAP counseling sessions, that were neither job-related, nor consistent with business necessity; this for the simple reason the employer, UH, only need focus solely on the performance or conduct problems and take appropriate steps, under UH policy [HR-72-Corrective Action], to address them, making mandatory referrals in the EAP completely superfluous and completely unnecessary, in *every* instance, for *every* class member, *regardless* of the performance or conduct problem. The said class being precise, objective, and ascertainable. For these reasons, Plaintiff's Motion should be granted and the Court should certify his class allegations.


## II.     Class Representative Meets the Test for Standing and the Motion meets the specific dictates of due process under the Mathews v. Eldridge Balancing Test.

The Plaintiff and pro se litigant, Dundee, has a discrimination claim currently before the Court, Frank Dominic Dundee, Plaintiff vs Danialle Lynce, et al., Defendants; such claim involving violation of Title VII and violations of Title I of the ADA. The violations of Title I

3

of the ADA for "perceived disability" or being "regarded as disabled" are *exactly* the same as the members in the class certification motion, making this a prima facie claim of discrimination. The violations of Title I of the ADA regarding mandatory medical examinations that were neither job-related nor consistent with business necessity, are *exactly* the same for Dundee and all class members, making this a prima facie claim of discrimination. Dundee's first-hand knowledge of UH's policy of unlawful, prejudicial, unilateral, imposition of EAP counseling sessions, under threat of termination, despite the fact that such a discriminatory policy is completely unnecessary, exposing UH to violations of Title I of the ADA, makes him an ideal class representative. In addition, Dundee's 20 year experience and skills as an officer in a labor union gives him insight and experience into employee rights and representation that most pro se litigants lack before the Court.

In asking the Court's approval of Dundee as class representative and for the Court's appointment of class counsel, the Plaintiff relies on meeting the three factors of the Matthews v. Eldridge balancing test for due process, as a citizen's entitlement. In its ruling in *Mathews*, the Court commented that "the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." The Plaintiff realizes that such undefined terminology opens the door for an array of interpretations. Supporters of *Mathews*, however, contend that the balancing of the three parts gives courts flexibility in assessing a particular set of facts. It is the hope of the Plaintiff that this Court will apply that flexibility to the Plaintiff's requests, based on the concept of fundamental fairness and in light of the egregious violations of Title I of the ADA, by mandate of UH policy, that continue, unimpeded, to this day.

4

The Mathews v. Eldridge balancing test provides that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Under the Motion for Class Certification, the claimant's economic interests are particularly compelling under Mathews, as violations under Title I of the ADA range from $50,000 to $300,000, under EEOC award limits, depending of the size of the employer, for each class member in the claim.  If the court should allow the Class Motion to move forward and if the Court should make a finding in favor the Class at trial, the awards to the class from UH could reach into the tens of millions of dollars. These are sufficient for the Court's appointment of counsel as a matter of due process.  If the Motion for Certification of Class is not granted, because pro se litigants cannot file, the risk of erroneous deprivation of each class member's interest, past and current discrimination in violation of Title I of the ADA, through the procedures should allow the Court's use of additional or substitute procedural safeguards, such as appointing legal counsel and allowing the Plaintiff, Dundee, to file the Motion for Certification of Class.  Such additional or substitute procedures pose minimal fiscal and administrative burdens on the Court; thus all three requirements of the Mathews v Eldridge balancing are met.

**III. University Hospitals Policy & Procedure, HR-85-Employee Assistance Program in relationship to Rule 23 requirements.**

5

The abuses carried out against UH employees under the policy, HR-85-Employee Assistance Program, are *precisely* what Congress designed Title I of the ADA to protect against. Under HR-85-Employee Assistance Program there are two types of referrals into the EAP: 4.1 Self-Referral and 4.2 Mandatory Referral.  Despite the Defense's attempt to include employees who self-refer into the Plaintiff's Motion for Certification of Class, those employees are *NOT* included in the class.  Only employees who were required by their supervisor under 4.2, either as a Tier 1 Mandatory Referral, under 4.2.1, or under Tier 2 Mandatory Referral 4.2.2, are included in the class.

### a. Numerosity

Since the policy, HR-85, 4.2, has been in place since *at least* 2003, sixteen years ago, and UH has approximately 27,000 employees, common sense dismisses the Defense argument that numerosity isn't met in the Class Motion.  If only five employees, out of 27,000, were mandated yearly into EAP counseling sessions, eighty employees would be included in the class, meeting the numerosity requirement.  Common sense says that the number employees mandated over *at least* a 16 year period, is much higher.

### b. Ascertainability

Under HR-85, 5.7, employees' EA records are maintained in a secure area and kept separate from personnel files and medical records.  So the Defense's argument against being able to readily ascertain each employee in the class fails, as the records are immediately available to subpoena, under UH Policy, HR-85, 5.8.

6

## IV.    UH Employment Decisions Based Upon Perceptions Of Disability Violates The ADA

The "regarded as disabled" test, is a particularly interesting facet of the ADA. The test focuses less on the extent of an individual's actual impairment and more on how others perceive the individual, as well as the effect of those perceptions on the attitudes toward, and assumptions about, the individual's abilities. The ADA regulations provide that an individual is "regarded as  disabled" if she: (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has none of the impairments specified in the ADA subsection,5 but is treated by an employer as having a substantially limiting impairment.  Therefore, an individual will be "regarded as disabled" when others behave toward that individual as if she had a substantially limiting impairment, regardless of whether the individual actually has such an impairment.

Under UH's Policy & Procedure HR-85, 4.2 Mandatory Referral into EAP counseling, **it is implicit in any reasonable reading**, that the employee is "perceived" or "regarded" as disabled by the immediate supervisor, requiring, in the supervisor's non-medical diagnosis, a mandatory intervention by an EAP counselor.  This is regardless of the conduct or performance issue in question.  The policy also ignores the fact that an employer may choose to focus solely on the performance or conduct problems, under UH Policy, HR-72, Corrective Action, and take appropriate steps to address them, without a mandatory referral into counseling, making such a policy as UH HR-85, 4.2, completely unnecessary.  Especially when the policy of mandatory EAP referral is easily abused, changing a seemingly benign idea like "employee assistance"

7

into a weapon of harassment; a cudgel which is an affront to human dignity, by embarrassing and degrading the employee. A reasonable person could conclude that exposure to the indignities inherent in HR-85, 4.2, would cause the employee to resign or be terminated, rather than submit to a mandatory medical examination that "perceives" or "regards" the employee as defective in some capacity.

The Court should take note of an email, dated January 10, 2018, to Heather Harmon, VP, UH Human Resources, under the subject heading, "This really happened," attached. The email discusses the actions of the Head of the UH EAP Department, Jill Fulton-Royer, prior to a mandatory EAP counseling session with the Plaintiff. Ms. Fulton-Royer, *herself the head of the EAP*, exposed the stigma that is attached to mandatory EAP referrals. During Discovery, as the class membership is ascertained, the Court should note the number of class members who resigned or who were terminated BEFORE submitting to the humiliation of mandatory EAP counseling. A reasonable person might wonder if such humiliation might trigger thoughts of suicide in susceptible individuals.

The Court should also take note of another, more recent, attached email, from EAP Counsellor David Riccardi, to an employee currently mandated into counseling. The email demonstrates the intrusiveness of HR-85, 4.2 into the individual's personal medical information, the coercive tactics under the threat of further disciplinary action and the harassing nature of the correspondence.

UH Policy, HR-72, Corrective Action, has primacy over each and every scenario in which an employee can have performance or conduct problems; rendering Policy & Procedure HR-85, 4.2 Mandatory Referral into EAP counseling unnecessary. In fact, the policy states, under HR-85-3, "A request for EA services will not jeopardize an employee's job security or

employment opportunities. Counseling and/or treatment will not be viewed as a substitute for or a defense to receiving corrective action." The Court should note that this *explicit* language is an admission on the part of UH that no type of counseling, neither voluntary, nor mandatory, has any effect whatsoever in mitigating the consequences when an employee is in corrective action, under UH Policy, HR-72, Corrective Action.

The range of employee behavior that can land any UH employee into a Mandatory Referral under HR-85, 4.2 is without limit. Under Attachment A, the range is from violent behavior, to "other." All such behavior is addressed under UH Policy, HR-72, Corrective Action. Even when the ADA permits an employer to seek medical information or require a medical examination, it still may be difficult to determine if that is an appropriate course of action. It is advisable for employers to determine whether simply addressing the problem without such information will be effective. Yet institutional hubris on the part of UH, even when knowingly exposed to the legal consequences for violations of Title I of the ADA through EEOC complaints and recent court decisions that warn of the consequences of mandatory EAP referrals, insists on stubbornly maintaining a policy that thumbs its nose at Title I of the ADA.

## V.  Mathews v Eldridge and the Relationship to Institutional Hubris.

It is said of many corporations that they are "too big to fail." A corollary of this statement is that many corporations are too big "to assail." University Hospitals Corporation falls into this category and "institutional hubris" explains why much of its decisions are made without regard to the law. The influence that such a powerful corporation has is pervasive. An examination of the FOIA files from Dundee's EEOC complaints demonstrate that even that government agency was cowed by UH's political and community influence. Had the Cleveland

9

EEOC lived up to the promise of its charter, a class action lawsuit would have been the result of Dundee's EEOC charges, making this compliant before the Court unnecessary.

A corporation the size of UH has access to the best legal minds available for advice on compliance with the ADA.   UH Legal Department no doubt is aware that an employer may choose, instead of a mandate under threat of termination, to *refer* an employee to an EAP or to make such a *referral* in addition to imposing discipline.  Yet, institutional hubris stands in the way of UH changing the policy of mandatory EAP counseling referrals.  The ADA does not even require employers to establish employee assistance programs or to provide employees with an opportunity for rehabilitation in lieu of discipline.  UH relies on its size and pervasive influence, secure in its track record of defeating most complaints.

The Plaintiff, a pro se litigant, can only rely on his life experience in collective bargaining, grievance procedure, negotiation, mediation, the FMCS, knowledge of employee rights and the Constitutional safe guards inherent in Mathews v Eldridge, as the rock in the sling against the Goliath that is University Hospitals Corporation, especially on its home court.

### VI.    Conclusion

The Plaintiff asks the court to reject the Defense's dispositive motion against The Motion for Class Certification.   The Plaintiff's Motion *does* comply with Local Rule 23.1 because he presented substantial facts in support of the necessary allegations to be a Class Action.  The Class Action prerequisites in Fed. R. Civ. P. 23(a) are met conclusively and satisfy the Plaintiff's Motion.   The Plaintiff, under procedural due process, based on the concept of fundamental fairness in the Mathews v Eldridge balancing test, asks the Court to permit Dundee

to serve as a class representative and to have the Court appoint class counsel in order to allow the Motion for Class Certification, lest the members of the class be deprived of life, liberty or property, under the Fifth Amendment.


Respectfully submitted


Frank Dominic Dundee

Pro Se Litigant

7707 Amberwood Trail

Boardman, Ohio 44512

Telephone:    330-398-8274

Facsimile:    330-726-2662

Email:  fdundee@gmail.com

11