**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| FRANK DOMINIC DUNDEE, ) | CASE NO. 1:19cv01141 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | JONATHAN D. GREENBERG |
| UNIVERSITY HOSPITALS CORP, ) | |
| et al., ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendants. ) | (Doc. Nos. 5 & 6) |

This case is before the Court upon a referral for general pretrial supervision, dated July 23, 2019. (Doc. No. 8.) Currently pending is Defendants' Danialle Lynce, Jason Glowczewski, Shawn Osborne and Rachael Lerman (collectively, the "Individual Defendants") Motion to Dismiss For Failure to State a Claim Against the Individual Defendants. (Doc. No. 5.) Plaintiff Frank Dominic Dundee filed a Brief in Opposition on September 24, 2019,[1] to which Defendant replied, and Plaintiff filed a surreply.[2] (Doc. Nos. 15, 16, 19.) Also currently pending is Defendant University Hospitals Health Systems, Inc.'s ("UH") Motion for Judgment on the Pleadings. (Doc. No. 6.)

---

[1] This brief and Dundee's other brief in Opposition to the motion for Judgment on the Pleadings were both filed after the deadline set by N.D. Ohio Local Rule 7.1(d). In the interests of equity, the Court gave Dundee's briefs full consideration, but reminds him that even *pro se* plaintiffs are responsible for learning and following the local rules, which can be found on the Court website at: https://www.ohnd.uscourts.gov/court-info/local-rules-and-orders.

[2] Both of Plaintiff's surreplies were filed without first seeking and receiving leave from this Court, as required under our Case Management Order. (Doc. No. 11 at 2.) However, because Plaintiff is *pro se,* and because the surreply filed in response to the Motion for Partial Judgment on the Pleadings (Doc. No. 18) contained new and relevant information, such that the Court would have granted its filing in the normal course, it is considered here.

Plaintiff Frank Dominic Dundee filed a Brief in Opposition on September 24, 2019, to which Defendant replied, and Plaintiff filed a surreply. (Doc. Nos. 14, 17, 18.)

For the following reasons, the Court recommends that the Individual Defendant's Motion to Dismiss (Doc. No. 5) be GRANTED and that Defendant UH's Motion for Judgment on the Pleadings (Doc. No. 6) be GRANTED IN PART and DENIED IN PART.

## I. Procedural Background

On May 20, 2019, Plaintiff Frank Dominic Dundee ("Plaintiff" or "Dundee") filed a *pro se* Complaint in this Court against Defendants Danialle Lynce, Jason Glowczewski, Shawn Osbourne, and Rachael Lerman (the "Individual Defendants"), and Defendant University Hospitals Health Systems, Inc. ("UH," or, collectively, "Defendants") alleging retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a); medical exams in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000e-2(a); and disability discrimination and harassment in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000e-2(a). (Doc. No. 1.)

Defendants jointly filed an Answer on July 19, 2019. (Doc. No. 4.) On the same day, the Individual Defendants also filed a Motion to Dismiss for Failure to State a Claim and Defendant UH also filed a Motion for Judgment on the Pleadings (Doc. Nos. 5 & 6.)

## II. Factual Allegations

The Complaint contains the following factual allegations[3]:

---

[3] The factual allegations set forth in the brief accompanying Dundee's Complaint are non-sequential. (Doc. No. 1-1 at 3-5.) He opens with the June 26, 2016 complaint, which is based on harassment allegedly occurring between Spring 2012 and October 2013. (*Id.* at 3.) He then jumps back in time to his November 2014 meeting with representatives of the UH Compliance Department, which he notes as the second time he reported the harassment, although

Between Spring 2012 and October 2013, Dundee was subjected to at least three unwelcome sexual advances by his supervisor, Rachael Lerman. (Doc. No. 1-1 at 3.) He did not respond to her advances "in-kind," and, as a result, "was singled out for specious corrective actions about manufactured and magnified infractions." (*Id.*) He "was reluctant to file charges against his supervisor for fear of retaliation and out of concern for her family." (*Id.*)

In November 2014, Dundee met with the UH Compliance Department to report the hostile work environment. (*Id.* at 4.) UH agreed to have Rebecca Besselman, UH Geauga Human Resource Officer, present at all meetings between Dundee and Ms. Lerman, and further agreed that Danialle Lynce, the Regional HR Director, whom Dundee accused of bias, would not be present. (*Id.*)

On June 26, 2016, Dundee filed a complaint of sexual harassment against his supervisor, Rachael Lerman, based on the unwanted sexual advances she had made between Spring of 2012 and October 2013. (*Id.* at 3.) This complaint was sent to Rebecca Besselman, UH Geauga Human Resource Officer, for investigation. (*Id.*) Ms. Lynce, who Dundee had accused of bias in 2014, conducted the investigation of Dundee's accusations, along with UH Compliance attorney Ed Soyka. (*Id.*) After a 5-week investigation, they reached no finding on the merit of Dundee's allegations, but dismissed his complaint as "untimely." (*Id.*)

On August 4, 2016, during his evening shift as a staff pharmacist at UH Geauga Medical Center, Dundee received a call from his regional supervisor, Jason Glowczewski, asking him to attend a meeting the following morning at 7:00 a.m. at the HR offices. (*Id.* at 5.) He was told the

---

the circumstances of the first report are not described. (*Id.* at 3-4.) Then he returns to events occurring in August 2016. (*Id.* at 5.) In this report, the Court sets forth the factual allegations in sequential order, and notes that there is a gap of 18 months between Dundee's November 2014 and June 2016 complaints, although they are both based on the same acts of sexual harassment, which ended in October 2013.

meeting would be about the concern that he had filed. (*Id.*) Days earlier, he had received an email from Ms. Lynce informing him that the investigation of his complaint had been closed with no findings. (*Id.*)

The August 5, 2016 meeting was attended by Dundee, Ms. Lynce and Mr. Glowczewski. (*Id.* at 6.) Dundee was provided with examples of inappropriate language in documents he had "written as attachments to disciplines and substandard performance reviews," and told he would be fired if he ever expressed such sentiments in the future. (*Id.*)

On August 8, 2016, Dundee sent an email entitled "An F.Y.I. to UH Compliance Department regarding EEOC recognized protected activities retaliation" to Ed Soyka, an attorney in the UH Compliance Department who had been present at the November 2014 meeting. (*Id.* at 8-9.) He detailed the events of the August 5 meeting and explained why he believed they were a violation of Title VII. (*Id.*) He never received a reply. (*Id.* at 9.)

On June 26, 2017, Dundee returned to work after a week-long vacation, and was immediately called to a corrective-action hearing by Ms. Lynce. (*Id.* at 9.) Dundee reported to the HR office, and found Ms. Lynce, Ms. Lerman and a UH security guard waiting for him. (*Id.* at 10.) Ms. Lynce and Ms. Lerman informed Dundee that he was receiving a "final step warning" because he had violated UH policies on diversity and contributed to a "Conflictive Work Relationship." (*Id.* at 10-11.) The violations were based on the phrases "you're a good kid," "He's a pup with practically no experience," and "A nice boy, but," which he used in emails addressed to Ms. Besselman. (*Id.* at 11.) Dundee was informed that he would have to attend counseling sessions with the UH Employee Assistence Program ("EAP") in order to keep his job. (*Id.* at 13.)

On July 10, 2017, Dundee filed charges of retaliation in violation of Title VII with the EEOC,

relating to the foregoing events. (*Id.* at 13.)

On July 26, 2019, Dundee attended his first required EAP counseling session with David Riccardi at the UH Ahuja Medical Center. (*Id.*) Mr. Riccardi told Dundee that he would be required to participate in future counseling sessions and also participate in a 3-hour psychiatric exam. (*Id.* at 14.)

Dundee asked the UH Compliance Department if his participation in EAP counseling could be suspended until the EEOC ruled on whether it was a violation of Title I of the ADA, as Dundee asserted. (*Id.* at 15.) He did not receive a reply to this request. (*Id.*)

Dundee did not attend any further EAP counseling sessions or the psychiatric exam. (*Id.* at 16.)

On November 22, 2017, Dundee received a letter in the mail from Shawn Osborne, VP of Pharmacy Services, stating that Dundee had until December 7, 2017, to meet with the head of EAP for a counseling session. (*Id.*) Dundee responded to Mr. Osborne via email, and also scheduled the mandated counseling session. (*Id.* at 16-17.)

On January 10, 2018, Dundee attended an EAP counseling session with Jill Fulton at UH Geauga Medical Center. (*Id.* at 18.) At the conclusion of their meeting, she asked him to schedule another session, and he declined, explaining that he believed these sessions violated Title I of the ADA. (*Id.*)

On April 14, 2018, Dundee filed a complaint with the Ohio Civil Rights Commission ("OCRC") claiming that the January 10 counseling session violated Title I of the ADA. (*Id.*, Doc. No. 6 at 4.)

The Defendant's Motion for Judgment on the Pleadings seeks consideration of these additional facts, drawn from the EEOC filings related to this action:

-5-

The OCRC transferred Dundee's complaint to the EEOC, where it was assigned Charge Number 22A-2018-02065. (Doc. No. 6 at 4.) On July 20, 2018 the EEOC closed its file regarding both Dundee's alleged Title VII and ADA violations, and issued a Dismissal and Notice of Rights ("Dismissal"), which included the following "Notice of Suit Rights":

> You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.

(*Id.,* Doc. No. 6-4, Ex. D, emphasis in original.)

### III. Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge whether the Complaint raises a right to relief above the speculative level "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555 556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

Generally, in ruling on a 12(c) or 12(b)(6) motion, "the court may only consider documents attached to, incorporated by, or referred to in the pleadings," because if they stray outside those parameters, the motion must be treated as seeking summary judgment under Rule 56. *Whittiker v.*

*Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the claims. *Weiner v. Klais and Company*, 108 F.3d 86, 89 (6th Cir. 1997). Therefore, they may be considered without converting a Rule 12(b)(6) motion to dismiss to a motion for summary judgment. *Id.* The Sixth Circuit has applied the same analysis to determine what information may be considered without converting a Rule 12(c) motion for judgment on the pleadings to one for summary judgment. *Savage v. Hatcher*, 109 F. App'x 759, 760 (6th Cir. 2004) (citing *Weiner* regarding limiting a federal court's review to the "pleadings" when considering motion for judgment on the pleadings); *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007) (legal standard for adjudicating a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion). In adopting this standard, the Sixth Circuit noted that "a plaintiff is under no obligation to attach to his complaint documents upon which his action is based. However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner*, 108 F.3d at 89 (citations omitted).

### IV. Analysis

**A.      Failure to State a Claim Against Individual Defendants**

The Individual Defendants seek to have all of the claims against them dismissed. (Doc. No. 5.) All of the Individual Defendants are employees of Defendant UH. (Doc. No. 1 at 2.) Dundee has made claims under Title VII and the ADA, and the Individual Defendants assert that neither of those laws provide a basis for individual liability. (*Id.* at 4.)

Dundee responds that courts have found individual liability under Title VII and the ADA.

(Doc. No. 15 at 3-6.) He looks to the legislative history of the 1991 Amendments to Title VII as support for the idea that Congress intended to provide increased remedies and protections when it amended that law. (*Id.* at 7.) Finally, he argues that individual liability is necessary for deterrence of future discrimination. (*Id.* at 2.)

Dundee cites *Kolb v. State of Ohio, Dep't of Mental Retardation and Developmental Disabilities*, 721 F. Supp. 885, 891-92 (N.D. Ohio 1989) as the sole case in the Sixth Circuit where a court found an individual liable for discrimination in a Title VII case. However, seven years after *Kolb*, the Sixth Circuit "squarely addressed" the issue and held that "that an individual employee/supervisor, who does not otherwise qualify as an "employer," may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) "Since *Wathen*, courts in this jurisdiction have refused to recognize individual liability under Title VII." *Mason v. Nochomovitz*, No. 1:14-CV-1407, 2015 WL 2152704, at *2 (N.D. Ohio May 6, 2015); citing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000); *Dille v. Laborers' Local* 310, No. 1:14 CV 1451, 2014 WL 6473606, at *2 (N.D. Ohio Nov. 18, 2014): *Banks Bey v. Acxiom*, No. 1:09 CV 1249, 2010 WL 395221, *4 (N.D. Ohio Jan. 27, 2010 ) (individual defendants who were part of corporation's management staff are not considered "employers" under Title VII).

It is similarly "well-established in the Sixth Circuit that the ADA does not impose liability upon individuals." *Mason*, 2015 WL 2152704, at *3; citing *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999) ("Individual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases.").

In his Complaint, Dundee brings discrimination claims only under Title VII and the ADA, both of which, as a matter of law, do not provide for individual liability of fellow employees or supervisors. His equitable arguments do not change the clear limitations of the statutes he sued under, and the deadline to amend his pleadings has passed. Therefore, the Court recommends that the Individual Defendants' Motion to Dismiss for failure to state a claim be GRANTED.

### B. Judgment on the Pleadings

Defendant UH seeks a Judgment on the Pleadings on two grounds. (Doc. No. 6.) First, UH seeks to have Dundee's entire Complaint dismissed because UH alleges that Dundee's claims are time-barred since he did not file them within 90 days of the EEOC's July 20, 2018 Dismissal. (*Id.* at 6-7.) In the alternative, UH seeks dismissal of claims which relate to actions that took place more than 300 days prior to the July 10, 2017 filing of Dundee's first charge with the EEOC, alleging they are time-barred under 42 U.S.C. § 2000e-5(e). (*Id.* at 7-8.)

Dundee first responds that UH has made a factual mistake regarding the date on which the EEOC issued its Dismissal. (Doc. No. 14 at 4.) He asserts that the letter was dated August 13, 2018, and therefore the Complaint in this action was timely filed.[4] Next, he asserts that his Complaint properly incorporates events that happened more than 300 days prior to the filing of his EEOC charge because the law requires such a charge to be filed within 300 days of the last occurrence of harassment. (*Id.* at 2.) He identifies the last occurrence of harassment as the June 26, 2017

---

[4] Both parties agree that Dundee appealed the original EEOC decision, and on October 29, 2018, the EEOC issued a "Notice of Intent to Rescind." (Doc. No. 6 at 4; Doc. No. 14 at 4.) They further agree that this notice vacated Dundee's right to sue and "stopped the clock" on the 90-day deadline if it was issued within 90 days of the original EEOC decision. (*Id.*) Further, the parties agree that the EEOC issued a second "Dismissal and Notice of Rights" on March 8, 2019, and that Dundee filed the present action within 90 days of that decision. (*Id.*)

disciplinary meeting where he was issued a "final warning," and notes his EEOC charge was filed within 180 days of that meeting, on July 10, 2017. (*Id.* at 2-3.)

### 1. The 90-Day Rule

The Civil Rights Act of 1964, Title VII, requires that, if the EEOC does not choose to prosecute a complainant's employment discrimination charge, it shall notify the complainant of his right to bring a private enforcement lawsuit. It states that "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e 5(f)(1). Federal courts have strictly enforced this 90-day limit. *See, e.g., Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) (dismissing a *pro se* Title VII complaint filed outside of limitations)*; Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000) (declining to extend the deadline by equitably tolling beyond 90 days where the *pro se* claimant was delayed in receiving her letter).

The dispute about the date on which the EEOC issued the first Dismissal relating to Dundee's claims is the result of contradictory evidence. In his Complaint, Dundee did not provide a copy of the EEOC Dismissal on which the timeliness of his claim, in part, relies. He did not even reference it, although he referred to the second Dismissal he received in explaining that he had exhausted his federal administrative remedies. (Doc. No. 1 at 5.)

In their motion for a judgment on the pleadings, UH attached as exhibits an unsigned and undated copy of the first Dismissal, and a letter sent by Cheryl Mabry, Director of the EEOC's Cleveland Field Office. (Doc. Nos. 6-4 & 6-5.) In this letter, Ms. Mabry stated her decision "to rescind the no reasonable cause decision rendered in the case on July 20, 2018." (Doc. No. 6-5.) UH relied on the Ms. Mabry's letter to establish the date of the first Dismissal.

-11-

In his Opposition, Dundee provided a timeline that listed the date of the first Dismissal as August 13, 2018, but again did not provide documentation establishing the basis for this date. (Doc. No. 14 at 4.) However, in his Surreply, Dundee attached as a exhibit a copy of the first Dismissal which is signed by Ms. Mabry and dated August 13, 2018. (Doc. No. 18-1.) He also produced an e-mail which he received from Ms. Mabry, dated September 20, 2018, in which she assures him that, "[t]he [dismissal] notices are dated August 13$^{th,}$ so there is still time" for her to determine whether the cases should be reopened. (*Id*.) He avers that he "has no idea whether [the July 20, 2018] date [on the letter cited by Defendants] was a mistake on Ms. Mabry's part or not." (Doc. No. 18 at 1.)

For purposes of the Rule 12(c) analysis, the Court must take as true Dundee's allegation that the Dismissal letter was sent on August 13, 2018. If that is so, the parties do not dispute that the EEOC's October 29, 2018 "Notice of Intent to Rescind" stopped the tolling of the initial 90-day period, and the issuance of the second Dismissal on March 8, 2019, began a second 90-day period during which Dundee timely filed his complaint. Therefore, this allegation is not sufficient to support a judgment on the pleadings. The Court recommends that Defendant's Motion to Dismiss all of Dundee's claims on the basis that they are time-barred under the 90-day rule be DENIED.

### 2. The 300-Day Rule

The Sixth Circuit recognizes that "[u]nder the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *Parry v. Mohawk Motors of Michigan, Inc*., 236 F.3d 299, 309 (6th Cir. 2000); citing 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e 5(e)(1); *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000). However, this 300-day time period for filing a charge with the EEOC may be subject to equitable tolling. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). This circuit has recognized that "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 376 (6th Cir. 2002), quoting *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). This is known as the "continuing violation theory." *Id.*

There are two distinct types of continuing violations. The first is the "serial continuing violations theory," which was clarified by the Supreme Court in *National Railroad Passenger Corp. v. Morgan*. In *Morgan*, the Court significantly limited this type of equitable tolling by holding that, when an employee seeks redress for discrete acts of discrimination under Title VII, the continuing violations doctrine may not be used to recover for discrete acts that occurred outside the statutory filing period. *Morgan*, 536 U.S. 101. In other words, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' " *Id.* at 114. Therefore "each discrete act starts a new clock for filing charges alleging that act." *Greenleaf v. DTG Operations*, *Inc.*, No. 2:09-CV-192, 2011 WL 883022, at *6 (S.D. Ohio Mar. 11, 2011).

The second type of continuing violation is the "systemic continuing violation." The Sixth Circuit has held that equitable tolling of the 300-day requirement "still applies to discrete discriminatory acts that are part of a 'longstanding and demonstrable policy of discrimination.'" *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007), citing *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) ( "The second category of continuing violations, involving a longstanding and demonstrable policy of discrimination, is not implicated by *Morgan*.") Establishing a systemic continuing violation requires that a plaintiff "must demonstrate something

-13-

more than the existence of discriminatory treatment in his case." *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992). "A plaintiff must establish that the employer's 'standing operating procedure' included intentional discrimination against the class of which plaintiff was a member." *Austion*, 244 F. App'x at 647, quoting *Sharpe*, 319 F.3d at 269. The Sixth Circuit generally finds a systemic continuing violation only in cases where the defendant has a known policy or rule supporting discrimination. *See, e.g., Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991) (finding an "over-arching policy" of discrimination where that policy appeared plainly in the Ohio Revised Code and administrators openly adhered to the Code); *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 408 09 (6th Cir. 1999) (finding a "longstanding and demonstrable policy," which was memorialized in its constitution and bylaws, resulted in the "de facto exclusion" of African Americans from union membership).

Here, Dundee is not alleging "a past violation that continues into the present, such as unequal pay that continues to be paid unequally." *Russell v. Ohio, Dep't of Admin. Servs.*, 302 F. App'x 386, 390 (6th Cir. 2008); citing *EEOC v. Penton Indus. Publ'g. Co.*, 851 F.2d 835, 838 (6th Cir. 1988). In fact, he indicated in his Complaint that the Defendants are not currently committing acts of discrimination against him. (Doc. No. 1 at 4.) Nor does he allege his employer had a systemic policy of discrimination. Instead, he is alleging a series of discreet actions taken against him which are motivated by personal animus arising from his 2016 sexual harassment complaint. (Doc. No. 1-1 at 3.) These are exactly the type of "discrete discriminatory acts" that the Supreme Court held "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan,* 536 U.S. at 113.

The parties are in agreement that Dundee filed his first charge with the EEOC on July 10, 2017.

(Doc. No. 1-1 at 13; Doc. No. 6 at 2.) Since his pleadings fail to establish the type of systemic continuing violation that would equitably toll the 300-day statue of limitation, the Court recommends that Defendant's request to dismiss all claims based on events occurring more than 300 days prior to July 30, 2017 ― so all claims based on events prior to October 3, 2016 ― be GRANTED.

### V. Conclusion

For all of the foregoing reasons, the Court recommends that the Individual Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 5) be GRANTED, and that Defendant's "Motion for Judgment on the Pleadings" (Doc. No. 6) be GRANTED IN PART and DENIED IN PART. Dundee's claims based on events occurring prior to October 3, 2016, should be DISMISSED, while his claims based on events happening after that date are not time-barred and can move forward.

Date: December 3, 2019            s/ *Jonathan D. Greenberg*
                                                              Jonathan D. Greenberg
                                                              United States Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986)**.