


Frank Dundee <fdundee@gmail.com>

## An F.Y.I. to UH Compliance Department regarding EEOC recognized protected activities/retaliation.

**Frank Dundee** <fdundee@gmail.com>  Mon, Aug 8, 2016 at 9:16 AM
To: "Soyka, Edward" <Edward.Soyka@uhhospitals.org>

Mr. Soyka,

    Last Thursday, 8/4/16, around 2200, when I was at work at Geauga hospital, I received a call from Jason Glowczewski asking me to attend a meeting, after my shift on Friday, 8/5/16, at 0700, with him and Danialle Lynce, head of HR, in her office. Immediately I asked what the meeting was about, and Mr. Glowczewski said it was to discuss my "concern" that I had filed. Since I had him on speaker, my co-worker, Phil Snyder overheard our conversation. I had already been informed, by an email sent by Ms. Lynce that the investigation determined that my claim of sexual harassment by my supervisor could not be substantiated, and was therefore closed. I agreed to attend the meeting after my shift, hoping to hear an explanation of the investigation, especially in light of the fact that I never was offered the opportunity to speak to anyone from UH during the investigation.

    The meeting turned out to be a very traumatic experience for me. I went in thinking that they would at least be empathetic to my claim against Ms. Lerman, that she made inappropriate sexual advances to me on at least 3 occasions and that she retaliated against me for not responding in-kind. To my surprise, Ms. Lynce spent less than 5 minutes on my harassment claim and the rest of the meeting, about 20 minutes, devoted to threatening me with discharge, quoting from documents attributed to me from years past, from a large folder on her desk, that must have taken quite some time and effort to compile, with sentences taken out of context; as well as a departmental time and attendance document, as examples of violations of the UH personal conduct policy.

    I wondered to myself why they "threatened" me with future action, if I had so grievously violated UH policy, for years, as they were voicing? The message they delivered, unequivocally, is that I am on thin ice from here on out in my employment at UH and I need to watch my step. But their presentation seemed incongruous; that is why I refer to their verbiage as "threatening", because I felt that their charges were groundless, but nonetheless their mission was to send me a message. **To me I immediately recognized their efforts as retaliation against a protected activity, as expressed by the EEOC.**

    There was nothing subtle about the threats from Ms. Lynce and Mr. Glowczewski; they were overt, direct, vitriolic and emphatic. They both seemed intent on provoking a reaction from me that could have been actionable. I maintained my composure throughout, though I was completely blind-sided by their actions. The original premise of the meeting, in my mind, was to only discuss my claim. Once I determined that this was "pushback" for my filing the sexual harassment claim, saying as much, I requested to leave immediately, but I was not permitted by Ms. Lynce. I also asked for a copy of the time and attendance document, as an example that this was retaliation, and I was refused. I left there feeling that my every move, no matter how innocuous, going forward, could cause me to be terminated. It has caused me untold stress on the job, since. **In fact, I would not be surprised if find this email used against me in some fashion.**

    I went straight to my car after the meeting and immediately wrote down an accurate account of what had transpired with Ms. Lynce and Mr. Glowcczewski. I end up with a list of nineteen points. Of course, since I never knew the intent of the meeting, and had no witness, I realize I was at a disadvantage, and that Ms. Lynce and Mr. Glowczewski could concoct a completely different representation of what transpired. Regardless, I am confident in the truth and accuracy of my notes.

    Prior to this meeting, I had scheduled a meeting with Attorney Nancy Grim, of Kent, Ohio, for Friday, 8/12/16, to discuss my claim against Ms. Lerman. Now that meeting will also include a discussion of a claim against both Ms. Lynce and Mr. Glowczewski, as UH representatives, for retaliation against me for filing a protected action; my claim of sexual harassment against Ms. Lerman, with HR. As an attorney, I'm sure you are aware of the three things, under EEOC rules, that must occur to prove retaliation for undertaking a protected activity; the third of which is there must be evidence that an adverse action, such as Ms. Lynce's threats of termination, was taken in response to the protected activity, my claim. It includes:

    **Casual connection between the protected activity and the adverse action. Evidence that the decision was made soon after the protected activity. I don't know how much sooner an adverse action could take place than immediately, within the same meeting discussing the protected activity. That is the definition of "proximity."**

<u>As a dedicated employee, I am an example of the best of University Hospital.</u> I personify the mission of UH. I dedicate my service to the highest level of patient care. This can be confirmed objectively, with data from the pharmacy software package, phone logs, time stamps, tube system logs, as well as from the subjective opinions of the co-workers in my department, as well as from physicians and nurses outside of my department. My productivity is unmatched. My problem-solving skills are unmatched. In six years of working a shift alone, covering three hospitals, and supporting a new grad on 3rd shift at Ahuja, there is nothing that has overwhelmed me. I cover many, many open shifts as a matter of dedication, not remuneration. I have called-off once in the six-plus years I have been on staff, and that was due to grief upon the untimely death of my dog. I always man my shifts, despite my having motor-neuron disease.

No one is perfect, but all things considered, I am a stellar employee by any standard. Yet, I am threatened with discharge, defamed and denigrated; in a pattern, over a period of years. If pressed, I can and will show every example of my contributions, over and above what is necessary. I doggedly prevented blood and body fluid specimens from being sent in the tube system in the exact same containers as medications and IV's for patients, to prevent the possible spread of infection; persevering despite inaction and push-back over a period of years, from many in administration. In addition, another example is my contributions to projects, such as the outpatient pharmacy project, even though I felt that it was an ill-conceived waste of UH resources.

There is no manufactured offense, attributed to me, from emails, addendum's, replies to disciplines or evaluations, written or otherwise, that I cannot defend. I was a union representative for over 20 years, in the 70's, 80's and 90's. I thought that I left all that behind me, finding a wonderful job at a cozy and kindly little hospital like Geauga. But I find that my skill-set from those contentious years as a union rep are needed more than ever in the twilight of my career as a pharmacist. I never longed for a repeat of those years. But the situation is what it is and, at this point, an illustration is in order:

When I was union president of the Professional Employees Association, we were on strike against a large hospital system, the Western Care System, as it was called then, for 8 days in August, 1986. I was checking on our pickets at about midnight on a Sunday, at the largest hospital in the system, walking the block around the hospital, alone, when two guys ran at me out of the dark, one yelling my name. One of them I recognized as a member, Dan Novello; the other was his brother-in-law. He was brandishing a loaded pistol. They told me that they were at a local festival and the rumor out there was there would be a hit on my life that night, and they came to protect me. Both had been drinking. I told the brother-in-law to put that gun away, as he was pointing it at every car that passed us by. I "diplomatically" asked them to leave, that I would go to a phone booth and call the police about the rumor of a "hit". They left, only reluctantly, after asking me if I wanted them to slash tires of scabs in the hospital parking lot, which I forbid them to do. Then I continued my walk down to the next corner, and around the block, which was quite long, to check on our pickets. I never called the cops. Every car that went by and every noise I heard scared me to death. I didn't think that anyone would put out a hit on me, especially not the hospital system. But crazier things happen. I was traumatized, of course. But it didn't stop me.

So what I am saying is that even though I am human, and I have the same fears and anxieties that everyone has, and the fact I can be traumatized, my sense of justice won't allow me to back down. Not then. Not now.

Frank Dundee