

VIA EEOC Respondent Portal, Email and Regular Mail

November 1, 2017

Maria Colon
U.S. Equal Employment Opportunity Commission
Cleveland Field Office
EEOC, AJC Federal Building
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199

Re: Frank D. Dundee, Charge No. 533-2017-01275

Dr. Ms. Colon:

This Position Statement is submitted on behalf of University Hospitals Geauga Medical Center in response to the Charge of Discrimination filed by Frank D. Dundee. Mr. Dundee alleges that he has been discriminated against on the basis of disability and that he is being retaliated against for participating in a protected activity.

Initially, Mr. Dundee's charges of discrimination and retaliation should be dismissed. As will be shown below, his allegations are totally and completely without merit. There has not been any discrimination, nor is there any retaliation.

## General Information

UH Geauga Medical Center is a non-profit acute care facility providing a full range of services to residents in surrounding counties; UH Geauga Medical Center is part of the University Hospitals Health System and follows and adheres to UH policies.

UH is an equal opportunity employer that does not unlawfully discriminate in employment matters based on sex, race, age, disability or any other protected category. In addition, UH policies prohibit all forms of discrimination, and employees are provided with a procedure for reporting incidents of perceived discrimination. UH has a progressive step-by-step policy in place for addressing employees who depart from the expectations of performance, which allows for four (4) levels of corrective action, typically progressive in nature. These four levels are Confirmation of Counseling, Warning, Final Written Warning or Suspension, and Termination **(Exhibit D)**. The following exhibits detail these policies.

1. Copy of CE-2 UH Code of Conduct – Exhibit A
2. Copy of HR-63 Professional Behavior Policy – Exhibit B
3. Copy of HR-20 Anti-Harassment and Non-Discrimination Policy – Exhibit C.
4. Copy of HR-72 Corrective Action Policy – Exhibit D.


**University Hospitals**
Geauga Medical Center

5. Copy of HR-83 Compliant Resolution Policy – Exhibit E.
6. Copy HR-71 Attendance Policy – Exhibit F
7. Copy of HR-85 EAP Policy – Exhibit G
8. Copy of EEOC Charge and Copy of Notice of Dismissal – Exhibit H
9. Copies of each Corrective Action – Exhibit I
10. Copy of the Powerpoint – Exhibit J
11. Copy of the written exchange between Mr. Dundee and an outpatient pharmacist – Exhibit K

Facts and Response to Charges

Mr. Dundee began his employment with University Hospitals (UH) as a Pharmacist on May 3, 2010, reporting to Jason Glowczewski, Manager, Pharmacy. Effective September 9, 2012, Mr. Glowczewski was promoted to Director of Pharmacy for the UH System, and Mr. Dundee began reporting to Rachael Lerman, Manager, Pharmacy, for UH Geauga Medical Center. On July 10, 2016, Mr. Dundee's title changed from Pharmacist to Clinical Pharmacist when UH moved to consistent titling across the pharmacy teams. This title change did not reflect a change of duties or responsibilities, but an effort by UH to standardize job titles. Mr. Dundee was hired as and has been a regular full-time employee with University Hospitals, working 35 hours per week.

Throughout his tenure, Mr. Dundee has received corrective actions, as well as placement on a non-disciplinary performance improvement plan.
A summary follows: – (**Exhibit I**):

- October 2, 2013: Mr. Dundee was issued a Confirmation of Counseling for tardiness in violation of HR-71 Attendance Policy. (**Exhibit F**).
- October 20, 2014: Mr. Dundee was issued a performance improvement plan for failing to meet performance expectations. This was not a corrective action, this was a plan to improve Mr. Dundee's performance. Specifically, Mr., Dundee was not performing the assigned duty of checking EMS boxes and completing code trays during his shift. All other pharmacists were completing these tasks.
- June 14, 2016: Mr. Dundee was advanced to a Warning based on his behavior and substantiated complaints from coworkers who felt bullied by Mr. Dundee, a violation of HR-20 Anti-Harassment and Non-Discrimination policy (**Exhibit C**). An example of violation of HR-20 is attached as (**Exhibit K**). Mr. Dundee had an inappropriate exchange with another employee who asked Mr. Dundee not to turn off or lower the volume on the phone so staff could hear it.
- June 23, 2016: Mr. Dundee submitted his PowerPoint presentation entitled "A Human Resource Primer. The Orwellian Workplace: where up is down" during his Step One complaint resolution meeting with the Pharmacy Director and HR Generalist (**Exhibit J**).
- June 28, 2016: Mr. Dundee was sent a letter from the pharmacy director upholding the issuance of the corrective action at the Warning level.


**University Hospitals**
Geauga Medical Center

- June 26, 2017: Mr. Dundee was advanced from a Warning to a Final Written Warning for ongoing violations of HR-20 Anti-Harassment and Non-Discrimination policy. Details outlined below.

On Thursday, June 8, 2017, at 10:09 PM, Mr. Dundee wrote an email to Becky Besselman, HR Generalist. In that email Mr. Dundee referenced his colleague Derek Frost stating, "he's a pup with practically no experience. A nice boy, but..." These comments caused concern from Ms. Besselman, as comments of this nature are unnecessary, and Ms. Besselman was aware of Mr. Dundee's historical difficulties following HR-20 Anti-Harassment and Non-Discrimination policy.

On Saturday, June 10, 2017, at 1:28 AM, Mr. Dundee emailed Becky Besselman a second time. In his second email, Mr. Dundee addressed Ms. Besselman directly, saying she was "a good kid." Again, this caused a measure of concern for Ms. Besselman as behavior that is inconsistent with the UH policy and the expectations of how employees interact.

Both of the emailed comments described above were inappropriate and inconsistent with UH's values (excellence, diversity, integrity, compassion, and teamwork) and the expectations set forth in HR-63 Professional Behavior policy **(Exhibit B)** and the UH Code of Conduct **(Exhibit A)**. Comments of this nature are unwarranted and add no value in the working relationships, a fact not lost on Mr. Dundee, who has raised several age-related complaints against his manager. Given that Mr. Dundee had already been warned about making similarly controversial remarks, Mr. Dundee was advanced one step in the corrective action process from a Warning to a Final Written Warning on June 26, 2017. Additionally, UH has a policy for HR-85 Employee Assistance Program ("EAP") **(Exhibit G)**. UH recognizes that an employee's job performance may be affected by personal or work-related concerns. Employees can self-refer to EAP, or they may be required to meet with the EAP counselor and comply will all recommendations. An employee may be mandated to attend EAP in circumstances where the supervisor has previously met with the employee due to one or more concerns, including 1) attendance issues, 2) conflictive work relationships, and 3) deteriorating job performance. Given that Mr. Dundee was advised, both informally with coaching conversations and formally with disciplinary action, he met the requirement for conflictive work relationships, so he was referred to EAP as an opportunity to gain new insights and new skills to work collaboratively with peers in a manner that is consistent with policies, values, and the Code of Conduct.

On June 28, 2017, Mr. Dundee emailed Wendy Henoch, Compliance Officer to complain about the "unethical use of the Employee Assistance Program by the Human Resources Department at UH Geauga. A reasonable person could infer that the EAP has been weaponized by Geauga HR to, in effect, degrade, humiliate, harass and intimidate employees by remanding them to a series of sessions under the façade of 'helping' to rehabilitate the employee. A student of history might compare this to the Soviet Union's practice of sending dissidents to mental wards. This is unethical."


University Hospitals
Geauga Medical Center

Compliance issued a pro forma response for receipt of complaint. A series of exchanges and actions occurred, which are outlined here:

- On June 28, 2017, Mr. Dundee emailed me indicating that he wanted to begin the Complaint Resolution process in response to the Final Written Warning **(Exhibit E)**.

- On June 29, 2017, Mr. Dundee received an email from the EAP counselor, David Riccardi, confirming an 8:00 AM appointment scheduled for July 3, 2017 at UH Geauga Medical Center.

- On June 30, 2017, Mr. Dundee emailed the EAP counselor to cancel his appointment, citing a family conflict as the reason for the cancelation. He requested an 8:00 AM appointment on July 12, 2017.

- On July 6, 2017, Mr. Dundee emailed me that he did not wish to pursue Complaint Resolution.

- On July 7, 2017, I canceled the Step One Compliant Resolution at Mr. Dundee's request.

- On July 11, 2017, Mr. Dundee emailed the EAP counselor to cancel and reschedule his appointment due to driving issues. On the same day, Mr. Dundee emailed Compliance requesting assistance in obtaining answers to questions asked of HR.

- On July 12, 2017, Mr. Dundee emailed Compliance again asking why a certain HR person wasn't present for his meeting and alleging he was targeted.

- On July 13, 2017, The EAP counselor called Mr. Dundee to schedule an appointment for July 26, 2017, at 9:00 AM at the UH Ahuja Medical Center.

- On July 25, 2017, Mr. Dundee contacted Compliance Officer via email enclosing essays regarding his view on diversity.

- On July 26, 2017, a full month *after* his referral to EAP, Mr. Dundee met with the EAP counselor for the first time. He was referred to Warren Salkin, Ph.D. for evaluation on August 1, 2017 at 2:00 PM.

- On July 28, 2017, Compliance emailed Mr. Dundee indicating that, upon review of his complaints, no compliance concerns were found.

- On July 30, 2017, Mr. Dundee emailed Compliance with suggestions of what Compliance "should" be investigating.

- On July 31, 2017, Mr. Dundee canceled his appointment with Dr. Salkin.


**University Hospitals**
Geauga Medical Center

- On and after August 4, 2017, Mr. Dundee corresponded with the Compliance officer regarding his EEOC complaint.

Mr. Dundee has continued his pattern of non-compliance. As of the writing of this position statement, Mr. Dundee has failed to comply with the EAP mandate. UH has been fair, consistent, and appropriate in its handling of Mr. Dundee's violations of our policies and procedures. UH has, in no way, discriminated against Mr. Dundee. It is unclear to UH what "protected activity" Mr. Dundee references in his Charge, but UH has upheld our policies and procedures according to law.

Mr. Dundee has objected to many actions by UH and it's representatives. His complaints and concerns have been fully investigated by appropriate internal parties without substantiating his claims of harassment and discrimination. He has also filed a previous charge of discrimination with the Equal Employment Opportunity Commission, which was dismissed on November 19, 2013 (reference 532-2014-00108), **(Exhibit H)**. Paradoxically, Mr. Dundee's actions have been investigated when issues were raised by co-workers and those claims were often found to have merit. UH has discussed these matters with Mr. Dundee and has issued anecdotal notes to the file regarding these matters. UH has issued corrective actions when policies and procedures were violated.

## Conclusion

As set forth above, Mr. Dundee was not discriminated against on the basis of disability nor was there any retaliation. He was appropriately advanced, step by step, in disciplinary action for violating UH policies and the Code of Conduct. He was also referred to the Employee Assistance Program as a matter of course and in a manner that is compliant with UH policies. It is unfortunate that Mr. Dundee refuses to comply with UH policies; it is the hope of UH he will align his behaviors with the expectations.

As such, we respectfully request that the EEOC issue a dismissal.

Regards,

*Danialle Lynce*

Danialle Lynce
Director, Human Resources