# Correspondence dated November 6, 2017

Inbox x



Frank Dundee <fdundee@gmail.com>                                    11/22/17

to Shawn, heather.harmon

Mr. Osborne:

    At about 1400, on 11/22/2017, I received a correspondence from you, in the U.S. mail, dated November 6, 2017. You stated that I have until December 7, 2017, to contact Jill Fulton to schedule mandatory appointments in the EAP.

    I plan on making an appointment with my personal physician to obtain a written notice stating that the stress inflicted by the EAP sessions exacerbates my upper motor neuron disease, affecting my excretory functions, as well as my ability to walk and drive a car. Since I was just informed of your mandate today, and since this is a holiday week, I will not be able to schedule an appointment with my physician until Monday, November 27, 2017. The appointment may not occur before the deadline of December 7, 2017. **I assume that any action on your part will be held in abeyance until after my physician's appointment. I will inform you of the date of the appointment.**

    Regardless, mandatory EAP sessions, as part of the UH discipline process, most likely are illegal; so UH may wish to reconsider making attendance mandatory for anyone, regardless of my health issues. The courts have offered these remarks:

**1.    Employers should weigh the legal risks before sending an employee to counseling. Generally, an employer who focuses on the employee's conduct is on safer legal grounds than an employer who tries to speculate on the cause of such conduct.**

**2.    Requiring an employee to obtain counseling imposes a legal burden that employers can avoid by merely making all employees aware that EAP or other counseling resources are available should an employee determine that he or she needs counseling.**

**3.    An employer's best intentions will carry little to no weight in determining whether sending an employee for counseling amounts to a medical exam under the ADA. Even if the employer has no interest in obtaining a diagnosis of a mental health condition, courts are now likely to view any type of psychological or emotional counseling as a medical exam for purposes of the ADA.**

**4.    Employers must have their "ducks in a row" to make sure any required counseling is job-related and consistent with business necessity. Generally, employers should have sound and documented justification that explains why a medical exam is needed for an employee to perform his or her job. Thus, any decision to send out an employee for counseling now must be carefully scrutinized.**

    I disagree 100% with your statement about my behavior in the workplace. However, you offered to answer any questions that I might have. I have three that are related to accusations about my behavoir:

1. Can you supply specifics, with dates, time, names of the individuals involved and the circumstance in which I harassed any employee. On June 14, 2016, I was blindsided with a discipline procedure in which I was accused of:

- outbursts or yelling at other employees

- Difficulty working collaboratively Angry with others

- Rudeness to other employees

- A hostile attitude, including notes left in the workplace

I asked for specifics, both at that hearing and at my subsequent appeal, and I was refused in each instance. It is extremely difficult to defend yourself against phantoms. My appeal was denied and the discipline stood, with my having no knowledge whatsoever of the the specific incidents involved. So I would very much appreciate if you could look into each and every instance and supply the details.

2. I asked Ms. Lynce, twice, for specifics on who took offense by the phrases, "you're a good kid", "he's a pup", and "a nice boy, but..." in the two emails that I sent to Ms. Besselman regarding implementation of the cost-saving suggestions that I had submitted. Ms. Lynce never supplied specifics as to who took offense. I am left to assume that it was Ms. Besselman, since she was the person who received the emails.

3. Since June 14, 2016 was the last time I was formally disciplined, how did I arrive at a Final Written Warning on June 26, 2017? That is over 12 months since the last time I was formally disciplined.

Once again, thank you for offering to answer my questions. I am off, that is why I am emailing from home. This is the best email address to use for contact.

Sincerely,

Frank D. Dundee

---

**Osborne, Shawn** <Shawn.Osborne@uhhospitals.org>   11/29/17

to me, Heather

Hi Frank-
Thanks for your emails last week. I've taken some time to research your questions. Based on my review, you were provided all relevant and appropriate information as it relates to your June 14, 2016 and June 26, 2017 corrective actions. I understand you took advantage of the internal complaint resolution process in 2016 and chose not to pursue that for the most recent corrective action. However, I did review the June 26, 2017 Final Warning based on your question about the dates. The incidents that occurred which resulted in this action were within 12 months and hence why the discipline was appropriately issued at the Final Warning level.

I understand from your email that you were scheduling an appointment with your physician on Monday, November 27th. I would appreciate any update you have on that scheduling so we understand the potential implications to the December 7, 2017 required contact with Jill Fulton.

Regards,
Shawn

**From:** Frank Dundee [mailto:fdundee@gmail.com]
**Sent:** Wednesday, November 22, 2017 4:34 PM
**To:** Osborne, Shawn
**Cc:** Harmon, Heather (HR)
**Subject:** Correspondence dated November 6, 2017

Mr. Osborne:

**Frank Dundee** <fdundee@gmail.com> 11/29/17

to Shawn

Hi Shawn,

So what you are saying is that you rejected the request to hold the EAP sessions in abeyance until the EEOC investigation is completed?

Frank

**Frank Dundee** <fdundee@gmail.com> 11/29/17

to Shawn, heather.harmon, brian.shelton

Shawn,

I disagree with the claim that I was provided with all relevant information. Whoever is telling you that is playing with words. I have never been provided with the specifics of the June 14, 2016 discipline as to each incident nor the specifics of June 26, 2017 as to whether it was Ms. Besselman who initiated the discipline or another party (if it was Ms. Besselman, it was awfully strange that Ms. Lynce handled the meeting). I request the "specifics" again, please. That shouldn't be a problem since they claim that I was given the information already.

I was prepared for that answer. So the clock doesn't start the day the paperwork is signed? If that is so, the clock didn't start on June 14, 2016. It must have started at some time earlier, whatever time that may be. Can you tell me that exact time? It may be that we have to take it down to minutes and seconds, like a basketball game?

And just for clarity, the incident that has me on the precipice of termination, is that I wrote the friendly phrase, "you're a good kid", the empathetic phrase, "he's a pup", and the friendly phrase, "a nice boy, but..." in two emails that were in no manner hostile and just were discussing the implementation of cost savings



==suggestions that I submitted that would BENEFIT UH. That is the issue that causes you to speculate about my mental health and mandate me to the EAP?==

Did you know that Ms. Besselman and I were friends? We shared many a laugh together. I have often told her to her face that she's a good kid. In the manner that Humprhey Bogart told Ingrid Bergman, "here's looking at you, kid" in Casablanca.

And I always considered Derek Frost a friend. He reminded me in many ways of my oldest son. In fact, before he took the position at Geauga, he sought out my counsel, staying for over an hour to discuss the pluses and minuses. My recommendation was for him to take the position. He asked me specifically did i think the staff would respect him, because of his youth. I told him there was no need to worry about that if he respected the staff. And it seemed like he followed that advice. I had no ax to grind with Derek. Ever.

You know, I am attaching some thank you notes that I receive from the nursing units, from the last 6 months or so. I have many, many more, but it would take too long to send. And below you will find an email from Allene Naples, who heads-up the UH Specialty Pharmacy. We worked together less than a half-dozen time when she pinch-hit at Geauga, yet in that time we became friends. She wanted me to work for her. None of this supports the false narrative of the accusations from Ms. Lerman and Ms. Lynce. And rightly so because I am not that guy:

**From:** Naples, Allene (anaples1)
**Sent:** Thursday, March 30, 2017 9:25 AM
**To:** Dundee, Frank
**Subject:** RE: Hi!!!!!!!!!!!!!!

Hi Frank!!

It is SO great to hear from you! I hope all is well with you and your family! That is a big transition for your Anthony to make, and I am sure you will help in any way possible. I passed along your information to Scott & gave him my high recommendation for using you as coverage. He already knows I simply adore you, so hopefully he will reach out to you when they need help.

If you ever need anything, don't hesitate to call/text or email. My cell phone is 724-256-2008.

Thanks again!!

Allene

   *I chose not to appeal the last corrective action because my appeal was filing charges with the EEOC and I stated as such at the time. You have a record of that.

   ***My next appointment with my doctor was scheduled for Wednesday, March 7, 2018, before I received your correspondence. I called the office and they have me on standby if anything should open before then. I will let you know.**

   Can you let me know if UH is re-opening my sexual harassment charge against Ms. Lerman? Thanks.

Shawn, you're a good guy. I knew that when we worked together those few hours at Ahuja. And you seemed to know that about me. I don't know how you got dragged into this, but you have my sympathy.

**Frank Dundee**



EEOC Charge No. 533-2017-01275

## Relevant and appropriate information



Frank Dundee <fdundee@gmail.com>   11/30/17

to Shawn, Heather, brian.shelton

Hi Shawn,

Yesterday you wrote:

*I've taken some time to research your questions. Based on my review, you were provided all relevant and appropriate information as it relates to your June 14, 2016 and June 26, 2017 corrective actions.*

I told you I disagreed; that I have never been given specifics of the charges of the June 14, 2016 discipline, and the proof is with Ms. Rebecca Besselman and Ms. Lerman. "Relevant" and "Appropriate", two vague and ambiguous terms, are in the eye of the beholder.

You may or may not be aware, but I had complained to Compliance about the years of harassment by Ms. Lerman; so they assigned an HR rep, Ms. Besselman, to be present at all meeting between me and Ms. Lerman to monitor things. That is how I met Becky and we became friends. Well, Ms. Besselman was present at the final meeting with Ms. Lerman after my appeal over the June 14, 2016 discipline was denied.

During that meeting Ms. Besselman turned to me and asked, "Would you like to know the specifics involved in the discipline now?" I was incredulous. I said, "What good would that do me now?" "I needed to know that from the beginning." "It won't do one bit of good now." So that information, which Ms. Besselman had, exists. Evidently Ms. Besselman thought that it was "relevant" and "appropriate" to offer it to me, just a bit late. And since Ms. Lerman was present, she is being less than forthright if she says that I was supplied with that information. Furthermore, Ms. Lynce was not involved, so her input on the subject should be nil.

One other nugget. Ms. Besselman also said to me, "Well, there haven't been any complaints about your conduct since our last meeting", to put a positive spin on things. That was what I loved about Becky, she was terrific at her job. I told her, "That's interesting because I haven't changed a thing. If anything, because of these attacks on me, I've come to work in a terrible mood on most days."

And I still have zero information on the source of the June 26, 2017 discipline, after my **fourth** time asking: two times from Ms. Lynce; once from Ms. Henoch; and now once from you.

So Shawn, I think I would be a bit wary of what your sources are telling you. I don't think the truth is in their best interest, especially with the EEOC investigation looming. Remember, it isn't the crime, it's the cover-up.