IN THE UNITED STATES
DISTRICT COURT NORTHERN
DISTRICT OF OHIO
EASTERN DIVISION



| | |
|---|---|
| FRANK DOMINIC DUNDEE, | ) CASE NO. 1:19cv01141 |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| v. | ) MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| UNIVERSITY HOSPITALS CORPORATION | ) **MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER** |
| Defendant. | ) |

The Plaintiff (Pro Se Litigant), Frank Dominic Dundee, hereby moves in opposition to Defendant, University Hospitals, Inc. (UH) against entry of a Protective Order to govern the production and disclosure of confidential and sensitive information in this case.

The Plaintiff has submitted a Motion for Full or Partial Summary Judgement with the Court. In doing so, the Plaintiff has released the Defense from production of EFI documents, as requested by the Plaintiff's interrogatories. The Plaintiff also will not seek to depose any witnesses, for the Defense or otherwise. Most of the documents that the Plaintiff included as evidence in the Motion for Full or Partial Summary Judgement are available through a FOIA request to the EEOC and are not confidential. An examination of the few documents not procured from the FOIA request would not be deemed confidential in nature by any reasonable person.

The Plaintiff filed for the Motion for Full or Partial Summary Judgment because the evidence presents no genuine issue of material fact and the Plaintiff is entitled to judgment as a matter of law. The Plaintiff documented events of the case before the Court in real time, as the events

1

occurred, in emails and contemporaneous notes. The Plaintiff concluded that any tidbits of information obtained through an EFI request or through deposing witnesses would only serve as "noise," obscuring important evidence and not add to the strength of the Plaintiff's charge against UH.

The Defense states that, "As part of discovery in this matter, University Hospitals expects to produce documents of a personal and/or confidential nature. Specifically, documents relating to Plaintiff's alleged or perceived disability, Plaintiff's referral to an EAP (Employee Assistance Program) and sensitive documents relating to individuals who are not parties to this lawsuit are likely to be produced." The Plaintiff has never alleged, at any time, in the original charge filed with the EEOC nor in his charge before the Court, that he has a "disability." In fact, the Plaintiff checked off the boxes on the EEOC intake forms stating that he did not have a disability. The Defense, for some reason that is unclear, keeps repeating the canard that the charge before the Court concerns the Plaintiff "alleging" a disability.

In the Motion for Full of Partial Summary Judgment, the Plaintiff submitted FOIA documents needed to prove that UH discriminated, not based on any actual disability, as defined in the Equality Act, but rather the employer, UH, *perceives* there to be a disability in order to remand the Plaintiff into the EAP, as a form of direct discrimination and harassment. The Plaintiff has no issue regarding confidentiality of any document, under HIPAA or otherwise, of a personal nature produced by the Defense specific to the Plaintiff.

As for the few "sensitive documents relating to individuals who are not parties to this lawsuit" that are likely to be produced, those can be presented by the Defense to the Court and the Court should decide on each document's "sensitivity." The blanket, boilerplate, protective order is business as usual for the Defense in discrimination cases; used as a means to intimidate

2

the plaintiff into keeping silence. In the charge before the Court, the Defense Motion for Protective Order is too broad, as described in the law:

"Upon a showing of good cause, the court has discretion to issue a protective order that forbids a party from disclosing to other persons specific information acquired in discovery. The burden of showing good cause falls at all times on the party seeking protection."

"'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice."

"Annoyance, embarrassment, oppression, or undue burden or expense" is not shown lightly. Because release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground. To succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position."

Employer compliance with discrimination laws becomes merely symbolic, when the legal system allows guilty firms to escape justice. Employers like UH, and law firms like Giffen and Kaminski, are acutely aware of their own advantages within the legal system, perversely responding to discrimination complaints with increased managerial harassment and HR efforts to document or manufacture employment infractions. Employers deny the reality of discrimination: because under the law, discrimination is a finding of guilt, which almost never

3

occurs in a legal system stacked in the employer's favor and designed to dispose of charges long before a judge or jury examines the evidence. A protective order is part and parcel of the employer advantage within the legal system.

UH, with this overly broad protective order, is hedging its bets, whether the Court rules in their favor or not. The protective order will have a chilling effect on the Plaintiff discussing or making public the process and the results of this litigation. Win, lose or draw, the Plaintiff's case, in the era of #MeToo, is very much in the public interest and promotes the common good. The Defense uses the protective order, among other legal tools, to avoid public shaming of their corporate clients, by keeping the public and community unaware of unethical and illegal corporate behavior.

Legal scholars who have recently turned their attention to social norms and questions of social meaning have taken interest in shaming sanctions. One of the common threads that tie disparate punishments together is that each is designed to elicit moral disapproval from the offenders' fellow citizens. Far more than with penalties such as fines, this moral disapproval is the beginning and end of the punishment. Shaming thus draws on shared social meaning and on norms about permissible and impermissible behavior.

Corporations and corporate directors are enmeshed in communities in which reputation does indeed matter. The directors of large U.S. corporations are, in the words of one shareholder activist, "the most reputationally sensitive people in the world." Not only are shaming sanctions a potentially effective penalty for corporations and their directors, they already play a prominent and, in many respects, underappreciated role. Shaming can fill in the gaps of civil and criminal liability, ensuring that individual and corporate offenders are fully punished for their misbehavior.

4

For the above reasons, the Plaintiff respectfully asks the Court to deny the Defense Motion for Protective Order, by not doing business as usual, as the Defense expects, in this discrimination charge against University Hospitals. The Motion for Protective Order, in this era of #MeToo, will not serve the public interest nor will it serve the right to free speech under the First Amendment.

Respectfully Submitted,

*/s/ Frank Dundee*

Frank Dominic Dundee

7707 Amberwood Trail

Boardman, Ohio 44512

330-398-8274  fdundee@gmail.com

5