IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK DOMINIC DUNDEE, | ) | CASE NO. 1:19CV01141 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE JONATHAN D. |
| | ) | GREENBERG |
| UNIVERSITY HOSPITALS | ) | |
| CORPORATION, | ) | |
| | ) | **DECLARATION OF DANIALLE LYNCE,** |
| Defendant. | ) | **PURSUANT TO 28 U.S.C. §1746** |
| | ) | |
| | ) | |

I, Danialle Lynce, being of sound mind and over the age of eighteen, hereby declare as follows:

1. I am the HR Director for the Community Hospitals at University Hospitals.

2. Between 2013 and the present, I have acted as an HR partner for Rachael Lerman. During this time, I had several opportunities to interact with Plaintiff Frank Dundee and to observe his behavior and conduct.

3. I also consulted with Ms. Lerman regarding Mr. Dundee's behavior and performance on a number of occasions.

4. The University Hospitals Health System includes 15 Medical Centers, operates dozens of in-and out-patient health centers and employs more than 28,000 people, including more than 300 pharmacists.

5. Over the years, Mr. Dundee has filed several EEOC and OCRC Charges of Discrimination against University Hospitals. As a member of the HR team responsible for

EXHIBIT 2

Geauga Medical Center, I received notice of these Charges and any action taken by the EEOC or OCRC in response.

6. I am aware of the following Charges filed by Mr. Dundee since his employment began in 2010:

- November 2013 – EEOC Charge 532-204-00108
- September 2017 – EEOC Charge 533-2017-01275
- April 2018 – OCRC Charge CLE B4 (44538) 03172018
- September 2018 – OCRC Charge CLE B4 (44821) 08222018

7. On November 12, 2013, Mr. Dundee filed a Charge of Discrimination with the EEOC relating to an Employee Assistance Program ("EAP") flier Ms. Lerman had placed in his locker. The EEOC issued a Dismissal and Notice of Rights relating to this Charge on November 19, 2013. A true and accurate copy of the 11/19/2013 EEOC Dismissal and Notice of Rights is attached to this Declaration as Exhibit 2-A.

8. Over the years, Mr. Dundee has also made a number of internal complaints against Ms. Lerman with University Hospitals's HR, Compliance and/or Legal Departments. All of Mr. Dundee's internal complaints were investigated, and the results of each investigation were communicated to him. None of Mr. Dundee's internal complaints were found to have merit.

9. On November 4, 2014, Mr. Dundee made an internal complaint to paralegal Katie Perry that Ms. Lerman had engaged "in a pattern of behavior that has made the work environment intimidating and hostile for several years now." A true and accurate copy of the 11/4/2014 Letter to Ms. Perry is attached to this Declaration as Exhibit 2-B.

10. On June 14, 2016, Ms. Lerman issued a Corrective Action to Mr. Dundee for unprofessional conduct.

11. Mr. Dundee appealed that Corrective Action immediately through a Complaint Resolution Statement Form. A true and accurate copy of Mr. Dundee's 6/15/2016 Appeal is attached to this Declaration as Exhibit 2-C.

12. In his Appeal, Mr. Dundee accused Lerman of age discrimination, hostile work environment and sexual harassment.

13. Mr. Dundee made an internal complaint expanding on his claims of sexual harassment on June 26, 2016. A true and accurate copy of this Internal Complaint is attached to this Declaration as Exhibit 2-D.

14. Mr. Dundee claimed that Lerman had sexual harassed him in 2012 and 2013, but he had not mentioned it at the time "for fear of retaliation." He also stated that he feared for his safety because Ms. Lerman "has a personality disorder and is unstable."

15. On August 3, 2016, I informed Mr. Dundee by email that University Hospitals's HR and Compliance Departments had investigated his sexual harassment complaint against Ms. Lerman and "could not substantiate that [he was] subjected to any behaviors constituting sexual harassment by Ms. Lerman." A true and accurate copy of my 8/3/2016 email to Mr. Dundee is attached to this Declaration as Exhibit 2-E.

16. On August 5, 2016, I met with Mr. Dundee and Director of Pharmacy Jason Glowczewski to discuss Mr. Dundee's continuing inappropriate conduct at work and the results of University Hospitals's investigation of his sexual harassment complaint against Ms. Lerman.

17. During this meeting, I reviewed with Mr. Dundee numerous statements he had made that were inappropriate or unprofessional. Some of these statements were contained in addendums to Corrective Actions he had received. Others were in emails or other written documents Mr. Dundee had created. These statements included rude, derogatory and threatening

comments to and about his colleagues, including Ms. Lerman. I informed Mr. Dundee that, if he continued to make statements like these, he would be in violation of UH's professional behavior policy, which could result in corrective action up to and including termination.

18. The purpose of the meeting was not to threaten Mr. Dundee, but to counsel him that, if he continued to engage in inappropriate and unprofessional behavior at work, his employment could be terminated.

19. Mr. Dundee was not terminated after our August 2016 meeting, and he continues to be employed by University Hospitals in the same position, with the same duties and at the same rate of pay (increased on a regular basis consistent with University Hospitals's process).

20. There was no connection between my August 2016 meeting with Mr. Dundee and the Corrective Action he received from Ms. Lerman in 2017.

21. In 2017, as a result of Mr. Dundee's continuing unprofessional conduct, Ms. Lerman consulted with me regarding appropriate next steps. Following our discussions, Mr. Lerman decided to place Mr. Dundee on another Corrective Action and make a mandatory referral to EAP.

22. Policy HR-85 – Employee Assistance Program, a true and accurate copy of which is attached to this Declaration as Exhibit 2-F, governs mandatory referrals to EAP.

23. The purpose of the EAP is to provide a counseling and referral service to all employees and their immediate household members to assist them with both work-related and personal concerns.

24. There are several types of referrals available under HR-85, including self-referral, whereby an employee or household member voluntarily contacts EAP to schedule an

appointment. Critical incident referrals are made when an employee has been affected by a traumatic event at work or in the community.

25. Mandatory referrals occur when a supervisor determines that it is necessary for an employee meet with an EAP counselor. There are two types of mandatory referrals:

**Tier 1** – when an employee is referred by his supervisor for a Fitness for Duty determination, on suspicion of alcohol or drug use or because of "violent, hostile, or reckless behavior" that threatens others; and

**Tier 2** – when an employee is referred by his supervisor for attendance issues, conflictive work relationships or deteriorating job performance that has not been corrected despite counseling by the supervisor

26. Tier 1 Fitness for Duty determinations typically require a medical examination of the employee.

27. Tier 2 referrals, however, do not begin with a medical examination. There is no requirement that an employee have an actual or perceived disability or medical condition in order to receive a Tier 2 referral. No supervisor is required to determine that a referred employee has a mental impairment prior to making a Tier 2 referral.

28. Prior to making a Tier 2 EAP referral, no University Hospitals supervisor is required to make a medical diagnosis or even suspect that an employee may be disabled.

29. There is no implicit or explicit connection between Mr. Dundee's Tier 2 referral and any medical diagnosis by Ms. Lerman or any other University Hospitals employee, and University Hospitals did not have a diagnostic purpose in referring Mr. Dundee to EAP counseling.

30. Rather, University Hospitals's sole purpose was to provide support to Mr. Dundee in an effort to enable him to improve his conflictive work relationships and inappropriate conduct at work.

31. In connection with the EAP referral, and as required by Policy HR-85, Ms. Lerman and I prepared a written summary regarding the basis for the referral. This summary explained,

> **Background Information**: Frank works night shift. He is a seasoned pharmacist with many years of experience. He has had significant performance issues with several complaints about Frank by his coworkers and peers, both in and out of the Pharmacy department. He has very strained and challenging working relationships in general. Frank engages in lengthy dialogs, often via email, that are perceived as threatening, hostile, challenging, and/or contentious. His colleagues fear him and are reluctant to engage with him, stating they fear "retaliation."
>
> * * *
>
> **Recent Issue**: Most recently, Frank has made inappropriate comments in email about this coworkers age, saying "you're a nice kid" to an HR colleague. In another email, he wrote about his colleague that he was a "pup with practically no experience. A nice boy, but. . ." The tenor and tone of Frank's emails are concerning as well.

32. Mr. Dundee's EAP referral did not cause any change in the terms or conditions of his employment. Mr. Dundee did not experience any decrease in pay or benefits in connection with the EAP referral, there was no change in his job duties and he suffered no economic harm due to the referral.

33. A flier produced by University Hospitals about EAP lists Resilience Strategies suggested to build strong work relationships are decidedly non-medical and non-diagnostic:

- Enhance communication skills
- Learn boundaries of confidentiality
- Collaborate
- Discuss cases
- Seek inclusiveness and diversity
- Forster a team approach
- Address conflict-resolution proactively
- Strive to be genuine, empathetic and warm

A true and accurate copy of an Excerpt from the EAP flier is attached to this Declaration as Exhibit 2-H.

34. I did not perceive Mr. Dundee as having a mental disability, and no one ever informed me that he was mentally disabled.

35. I do not regard Mr. Dundee as being mentally disabled or believe that he is unable to perform his job because of a mental health condition.

36. Mr. Dundee's EAP referral related to an essential function of his position as third-shift Pharmacist for Geauga Medical Center, Conneaut Medical Center, Geneva Medical Center and Andover Immediate Care Center – i.e., his ability to conduct himself appropriately and work effectively with others.

37. In April 2018, Plaintiff filed a Charge of Discrimination against University Hospitals alleging retaliation and disability discrimination. A true and accurate copy of this OCRC Charge CLE B4 (44538) 03172018 is attached to this Declaration as Exhibit 2-G.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 15, 2020.

*Danialle Lynce*
_____
Danialle Lynce