IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK DOMINIC DUNDEE, | ) | CASE NO. 1:19 CV 01141 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| | ) | |
| UNIVERSITY HOSPITALS CORPORATION, | ) | |
| | ) | **BRIEF IN OPPOSITION TO** |
| Defendant. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |

NOW COMES Defendant University Hospitals Health Systems, Inc. ("University Hospitals") and hereby opposes Plaintiff's Motion for Summary Judgment (Doc. 31). Plaintiff is not entitled to summary judgment because he has not provided sufficient evidence to support any of his claims as a matter of law.[1] Plaintiff cannot establish a causal connection between his protected activity and any materially adverse action, his referral to the Employee Assistance Program ("EAP") did not violate the ADA and he has not presented any evidence that he was discriminated against because of a perceived disability.

For the reasons set forth in the attached Memorandum in Support and contained in University Hospitals's Motion for Summary Judgment,[2] Plaintiff's Motion should be denied, and judgment should be entered in favor of University Hospitals on all of Plaintiff's claims.

---

[1] Indeed, Plaintiff has presented no admissible evidence at all. For the purpose of opposing Plaintiff's Motion for Summary Judgment, University Hospitals assumes that Plaintiff could present the documents attached to his Motion in a form that would be admissible in evidence. For this reason, University Hospitals is not raising an objection under Federal Rule of Civil Procedure 56(c)(2).

[2] University Hospitals is filing a Motion for Summary Judgment contemporaneously with this Brief in Opposition.

1

Respectfully submitted,

*/s/ Rachael L. Israel*
Kerin Lyn Kaminski (0013522)
Rachael L. Israel (0072772)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:	216-621-5161
Facsimile:	216-621-2399
E-mail:	kkaminski@thinkgk.com
	risrael@thinkgk.com

***Counsel for Defendant University Hospitals Health Systems, Inc.***

## MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT

**I.**     **STATEMENT OF FACTS**

A detailed Statement of Facts is contained in University Hospitals' Motion for Summary Judgment and incorporated herein by reference.

**II.**     **STANDARD OF REVIEW**

Summary judgment may only be granted "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4]

**III.**     **LAW AND ARGUMENT**

    **A.**     **Plaintiff's Retaliation Claim Fails Because He Cannot Establish a Causal Link Between His Protected Activity and Any Materially Adverse Action.**

Plaintiff claims that he engaged in protected activity by making a sexual harassment complaint against his supervisor Rachael Lerman in June 2016. To obtain summary judgment, Plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) his exercise of protected rights was known to University Hospitals; (3) University Hospitals thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action.[5] For the purposes of summary judgment, University Hospitals does not dispute the protected activity, but it does dispute the existence of a causal link between Plaintiff's sexual harassment complaint and any materially adverse actions.

---

[3] Fed.R.Civ.P. 56(c).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

[5] *See* **Goodsite v. Bd. of Educ. of Norwalk City Sch. Dist.**, No. 3:16-CV-2486, 2020 WL 999776, at *8 (N.D. Ohio Mar. 2, 2020) (granting summary judgment on retaliation claim), citing **Russell v. Univ. of Toledo**, 537 F.3d 596 (6th Cir. 2008).

For Plaintiff to prove that University Hospitals retaliated against him, he must show "that the desire to retaliate was the but-for cause of the challenged employment action."[6] As the Supreme Court explained in *Nassar*,

> Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.[7]

Plaintiff cannot meet this higher standard of causation, and he is not entitled to summary judgment on his retaliation claim.

Although Plaintiff's summary judgment motion cites caselaw relating to hostile work environment retaliation, he did not present evidence in support of such a claim. Rather, Plaintiff has identified three specific actions as retaliatory:

> (1) During an August 5, 2016 meeting, Jason Glowczewski threatened Plaintiff with termination if he continued to engage in inappropriate conduct at work;[8]
>
> (2) During the same August 5 meeting, HR Director Danialle Lynch also threatened Plaintiff with termination if he continued to make inappropriate comments at work[9] and promised increased scrutiny of his behavior;[10] and

---

[6] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517 (2013).

[7] *Id*. at 360.

[8] 3/10/2020 Deposition of Frank Dundee ("Dundee Depo.") at 9-10 (ECF Doc. 42), excerpts of which are attached to University Hospitals's MSJ as Exhibit 6 ("It was his threats that I perceived as being a material adverse action."). According to Plaintiff, Glowczewski "stated that if I ever write another note on a sheet like that or any type of note going forward, that I would be subject to termination." *Id*. at 11.

[9] Dundee Depo. at 11-12 (Lynce "said that if I ever made statements like that again, I would be terminated").

[10] Dundee Depo. at 13.

2

>(3) On June 26, 2017, Lynce and Lerman issued a Corrective Action to Plaintiff for unprofessional behavior, including referring to his colleagues as "good kid," "nice boy" and "pup with practically no experience."[11]

A detailed analysis of the lack of evidence to support Plaintiff's retaliation claim – with regard to both causation and an adverse employment action – is set forth in University Hospitals's Motion for Summary Judgment. University Hospitals will not repeat that analysis here, but will instead address the arguments presented by Plaintiff in support of summary judgment.

First, Plaintiff contends that an adverse employment sufficient to support a retaliation claims is "'just about anything bad,' as long as it isn't really trivial."[12] Plaintiff cites no authority for this standard, and none exists. Rather, Plaintiff must establish that "a reasonable employee would have found the challenged action materially adverse."[13] In *Burlington*, the Supreme Court discussed the materiality requirement, stating,

>We speak of material adversity because we believe it is important ***to separate significant from trivial harms***. Title VII, we have said, does not set forth "a general civility code for the American workplace."[14]

In addition, the Court held that adversity is measured by the "reactions of a *reasonable* employee" because the "standard for judging harm must be objective."[15]

None of the cases cited by Plaintiff support his claim that he suffered a materially adverse action. Mere threats of termination are not materially adverse where the employee was not actually

---

[11] Dundee Depo. at 17-19 & 26 (agreeing that these actions include "all of the conduct" that Plaintiff identifies as retaliatory for summary judgment purposes).

[12] Plaintiff's Motion for Summary Judgment at p. 13.

[13] ***Burlington N. & Santa Fe Ry. Co. v. White***, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006).

[14] *Id*. (emphasis added).

[15] *Id*. at 68-69.

"terminated, demoted or disciplined at or around the time" the threats were made.[16] And allegations of "increased scrutiny. . . are not tantamount to adverse employment actions."[17] Moreover, it is clear that these allegedly adverse actions would not, in fact, have deterred a reasonable person from engaging in protected activity. They certainly failed to deter Plaintiff from filing internal complaints and three additional Charges of Discrimination after the August 2016 meeting.[18]

Next, Plaintiff argues that his sexual harassment complaint is causally related to the alleged materially adverse actions by temporal proximity. As Plaintiff acknowledges, however, temporal proximity alone is not dispositive where the alleged materially adverse action does not occur "very close in time" to the protected activity.[19] "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."[20] In this case, the passage of a year between the two events is not "very close in time," and Plaintiff has offered no additional evidence of retaliatory conduct.[21]

---

[16] **Shoup v. McDonald**, No. 3:14-CV-248, 2016 WL 3387309, at *7 (S.D. Ohio June 15, 2016) (granting summary judgment on retaliation claim).

[17] **Birch v. Cuyahoga Cty. Prob. Court**, 392 F.3d 151, 169 (6th Cir. 2004) (affirming dismissal of retaliation claim).

[18] Plaintiff sometimes filed his Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) and sometimes with the Ohio Civil Rights Commission (OCRC). Plaintiff filed EEOC Charge 532-204-00108 in November 2013; EEOC Charge 533-2017-01275 in September 2017; OCRC Charge CLE B4 (44538) 03172018 in April 2018; and OCRC Charge CLE B4 (44821) 08222018 in September 2018. *See* Declaration of Danialle Lynce ("Lynce Decl.") ¶ 6, attached to University Hospitals's MSJ as Exhibit 2, and Ex. 2-F; Dundee Depo. Exs. 4, 7 & 8.

[19] **Mickey v. Zeidler Tool & Die Co.**, 516 F.3d 516, 525 (6th Cir. 2008).

[20] *Id*.

[21] *Compare Mickey*, 516 F.3d at 525 (plaintiff met burden of causation where he was laid off the same day employer learned of protected activity), *with* **Evans v. Prospect Airport Servs., Inc.**, 286

Plaintiff has failed to meet his burden of proof on summary judgment, and his retaliation claim should be dismissed.

> **B.  Plaintiff's ADA Violation Claim Fails Because His EAP Referral Was Not a Medical Examination, but Was Job-Related and Consistent with University Hospitals's Need to Ensure a Safe and Harassment-Free Work Environment.**

The ADA prohibits employers from requiring medical examinations of an employee unless the examination is job-related and consistent with business necessity.[22] Plaintiff argues that his June 2017 mandatory EAP referral was an impermissible medical examination, not related to his job or consistent with any business necessity. Plaintiff's argument fails because University Hospitals did not require Plaintiff to undergo a medical examination. Plaintiff was referred to an EAP counselor to address his conflictive work relationships, not any underlying medical or mental health impairment. Even if Plaintiff could prove that his EAP referral was a medical examination, it was nonetheless permissible because it was directly related to Plaintiff's ability to safely and appropriately perform his job.

Detailed arguments regarding the legality of Plaintiff's EAP referral are set forth in University Hospitals's Motion for Summary Judgment. For the sake of brevity, University Hospitals will not repeat those arguments here, but will instead address the caselaw cited by Plaintiff in support of summary judgment. None of the cases cited by Plaintiff support a finding that University Hospitals violated the ADA.

For example, Plaintiff cites ***Bates v. Dura*** for the proposition that an "employer's emphasis on a diagnostic purpose" turns a procedure or test into a medical examination under §

---

F. App'x 889, 895 (6th Cir. 2008) (temporal proximity insufficient where employee was terminated "almost a year after he filed his third EEOC complaint"); ***Cecil v. Louisville Water Co.***, 301 F. App'x 490, 502 (6th Cir. 2008) (same where employee was terminated 17 months after complaint).

[22] 42 U.S.C. § 12112(d)(4)(A).

5

12112(d)(4)(A).²³ While that may be true, it does not support his claims in this case. University Hospitals did not have a diagnostic purpose in referring Plaintiff to EAP counseling.²⁴ No diagnosis was rendered by either David Riccardi or Jill Fulton.²⁵ University Hospitals's sole purpose was to provide support to Plaintiff in an effort to enable him to improve his conflictive work relationships and inappropriate conduct at work.²⁶ Thus, this factor weighs against a finding that the EAP referral was a medical examination and against summary judgment for Plaintiff.

Other cases cited by Plaintiff provide persuasive reasoning on the question of whether – assuming the EAP referral was a medical examination – it was nonetheless permissible under the ADA. In **Ward v. Merck**, the District Court granted summary judgment for the employer and concluded that its "requirement that Plaintiff submit to a fitness-for-duty evaluation was permissible under § 12112(d)(4)(A) of the ADA" because it was "job-related and consistent with business necessity." ²⁷ Indeed, the court found no fault with the employer's "decision to terminate the plaintiff's employment, after he refused or failed to submit to the examination."²⁸ Thus, the court found that a mandatory EAP referral was not only allowed under the ADA, but also that an employee's refusal to cooperate with the EAP process was a lawful basis upon which to fire the employee.

---

²³ **Bates v. Dura Auto. Sys., Inc.**, 767 F.3d 566, 569 (6th Cir. 2014).

²⁴ Lynce Decl. ¶ 29; Declaration of Rachael Lerman, Pharm.D., BCPS ("Lerman Decl.") ¶ 42, attached to University Hospitals's MSJ as Exhibit 1.

²⁵ Declaration of Jill Fulton, LISW-S, LICDC ("Fulton Decl.") ¶ 8, attached to University Hospitals's MSJ as Exhibit 5; Declaration of David Riccardi, LPCC, LICDC-CS, NCC ("Riccardi Decl.") ¶ 8, attached to University Hospitals's MSJ as Exhibit 4.

²⁶ Lerman Decl. ¶¶ 44-45; Lynce Decl. ¶ 30.

²⁷ **Ward v. Merck & Co.**, No. CIV.A. 04-CV-5996, 2006 WL 83114, at *9 (E.D. Pa. Jan. 9, 2006), aff'd, 226 F. App'x 131 (3d Cir. 2007).

²⁸ *Id.* at *9.

6

Similarly, the Sixth Circuit in **Denman v. Davey Tree** held that the employer's requests for medical information and an independent medical examination did not violate the ADA because they were job-related and consistent with business necessity.[29] In that case, the employee had bipolar disorder. The parties disputed whether he had requested an accommodation upon his return to work after an absence, but the Sixth Circuit determined that dispute was irrelevant because the employer "had a reasonable belief that Denman's ability to perform the essential functions of his job might have been impaired by his medical condition."[30] Like the Plaintiff in this case, the employee argued that the medical examination could not possibly be job related because his job performance was "excellent."[31] The court noted, however, that job performance was not the only relevant factor; the employee's "ability to show up for work [was] an essential function of his position."[32] Upon missing more than two weeks of work, the employee disclosed information about his bipolar disorder, and it was "reasonable for Davey Tree to believe that Denman's bipolar disorder could affect his ability to perform the essential functions of his job, since it had just caused him to miss work."[33]

Thus, to the extent this Court finds that the EAP referral was a medical examination, it was nonetheless permissible because it related to an essential function of Plaintiff's position as third-shift Pharmacist for Geauga Medical Center, Conneaut Medical Center, Geneva Medical Center and Andover Immediate Care Center – i.e., his ability to conduct himself appropriately and work

---

[29] **Denman v. Davey Tree Expert Co.**, 266 F. App'x 377 (6th Cir. 2007).

[30] *Id.* at 380.

[31] *Id.*

[32] *Id.*

[33] *Id.*

7

effectively with others.[34] One of Lerman's biggest concerns and a considerable factor in her decision to refer Plaintiff to mandatory EAP counseling was the fact that Plaintiff's co-workers had expressed reluctance to talk to Plaintiff due to his aggressive and rude behavior.[35] Such reluctance could impair patient care, since Plaintiff's co-workers were afraid to seek his assistance or counsel.[36]

In **Sullivan v. River Valley**, the Sixth Circuit affirmed summary judgment in favor of the employer school district on the employee's claim that a fitness for duty examination violated the ADA.[37] The plaintiff in that case engaged in a series of unprofessional behaviors that are quite similar to Plaintiff's conduct at University Hospitals: he "engaged in disruptive and abusive verbal outbursts, shoved papers in the faces of individual members of the board, and refused to stop when asked by the board president;" he criticized his superiors' decisions "in language deemed inappropriate by the district;" and he made derogatory comments about a supervisor who included negative feedback in his performance evaluation.[38]

Based on this behavior, the school district referred the plaintiff for a fitness for duty examination. The Sixth Circuit held that the referral did not violate the ADA because "an employer needs to be able to determine the cause of an employee's aberrant behavior":

> While it is true that the ADA limits an employer's ability to request unfounded examinations to prevent "the unwanted exposure of the employee's disability and

---

[34] Lerman Decl. ¶ 44; Lynce Decl. ¶ 36. The University Hospitals facilities in Conneaut and Geneva have pharmacists on the premises during the day. After hours, the staff at these Centers rely on the Geauga Medical Center pharmacist for medication dispensing and counseling. The Andover facility does not have a pharmacist on site and always relies on Geauga Medical Center pharmacists. Lerman Decl. at ¶ 4.

[35] Lerman Decl. ¶ 45.

[36] Lerman Decl. ¶ 36.

[37] **Sullivan v. River Valley Sch. Dist.**, 197 F.3d 804, 812 (6th Cir. 1999).

[38] *Id.* at 808-809.

the stigma it may carry," ***an employer may order a well-founded examination***. As the district court held, health problems that significantly affect an employee's performance of essential job functions justify ordering a physical examination "even if the examination might disclose whether the employee is disabled or the extent of any disability." ***The same is true for ordering a mental examination when aberrant behavior similarly affects an employee's job performance***.[39]

The remaining cases cited by Plaintiff either present undisputed statements of law or fail to support his § 12112(d)(4)(A) claim:

- ***Fredenburg v. Contra Costa***, ADA "places the burden on the covered entity" to show that medical examination is job-related and consistent with a business necessity;[40]

- ***Miller v. Whirlpool Corp.***, employer has the burden of showing job-relatedness and business necessity;[41]

- ***EEOC v. McLeod Health***, question of fact precluded determination regarding whether medical examination was job related and consistent with business necessity;[42]

- ***Painter v. IDOT***, mental health examinations were job-related and consistent with business necessity;[43]

- ***Bingman v. Baltimore County***, jury verdict in favor of employee was warranted where County used out-of-date medical authorizations to improperly obtain employee's medical records and forced him to undergo a medical examination based solely on speculation that his bones might be brittle;[44] and

- ***Hannah P. v. Coats***, referral of employee to voluntary counseling was job-related and consistent with business necessity.[45]

---

[39] *Id.* at 812 (emphasis added).

[40] ***Fredenburg v. Contra Costa Cty. Dep't of Health Servs.***, 172 F.3d 1176, 1182 (9th Cir. 1999).

[41] ***Miller v. Whirlpool Corp.***, 807 F. Supp. 2d 684, 687 (N.D. Ohio 2011).

[42] ***Equal Employment Opportunity Comm'n v. McLeod Health, Inc.***, 914 F.3d 876, 882 (4th Cir. 2019).

[43] ***Painter v. Illinois Dep't of Transportation***, 715 F. App'x 538 (7th Cir. 2017).

[44] ***Bingman v. Baltimore Cty.***, 714 F. App'x 244, 246-247 (4th Cir. 2017).

[45] ***Hannah P. v. Coats***, 916 F.3d 327 (4th Cir. 2019).

Plaintiff argues that University Hospital's entire EAP policy violates that ADA, but he has not provided any evidence to support this argument. He has failed to establish either that he was subjected to a medical examination or that this examination (if it occurred) was unrelated to his job and business necessity. For this reason, his requests for summary judgment on this claim must fail.

> C. **Plaintiff's Disability Discrimination Claim Fails Because He Cannot Establish that He Was Discriminated Against Because of Any Perceived Disability.**

Plaintiff argues that it is "implicit in any reasonable reading" of University Hospitals's EAP referral policy that the referred employee must be disabled. According to Plaintiff, for a supervisor to refer an employee to mandatory EAP counseling, that supervisor must first diagnose the referred employee as having a mental impairment that substantially limits one or more major life activity. This reading of University Hospitals's policy is inaccurate and unsupported by any evidence.[46]

Plaintiff's interpretation of University Hospitals policy is also inconsistent with the Sixth Circuit's holding in ***Sullivan***.[47] The plaintiff in ***Sullivan*** argued that his referral to a medical examination proved that his employer regarded him as disabled. In rejecting this argument, the court stated,

> ***A request that an employee obtain a medical exam*** may signal that an employee's job performance is suffering, but that ***cannot itself prove perception of a disability*** because it does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities. Deteriorating performance may be linked to motivation or other reasons unrelated to disability, and even poor performance may not constitute a disability under the ADA. Under the Act, working qualifies as a "major life activity."

---

[46] Prior to making a mandatory EAP referral, neither Lerman nor any other University Hospitals supervisor is required to make a medical diagnosis or even suspect that an employee may be disabled. Lynce Decl. ¶ 27. Lerman made no such diagnosis in this case, and she did not regard Plaintiff as having a mental disability. Lerman Decl. ¶¶ 40,47.

[47] ***Sullivan***, 197 F.3d 804.

> However, the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. A fortiori, a mere deterioration in performance at a single, particular job cannot constitute a disability. ***Just as requesting a mental evaluation does not indicate that an employer regards an employee as disabled, so too expressing concern over an employee's job performance does not show that an employer regards an employee as having a disability that substantially limits a major life activity.***[48]

In other words, the Sixth Circuit has concluded that merely requesting a mental evaluation does not establish that an employer regarded an employee as disabled. Given that conclusion, merely referring Plaintiff to EAP counseling – *without* requesting a mental evaluation – cannot, as a matter of law, prove that University Hospitals regarded Plaintiff as being disabled. In addition, as more fully set forth in University Hospitals's Motion for Summary Judgment, an EAP referral is not on its own an adverse employment action. Without some evidence beyond the existence of the EAP referral itself, Plaintiff is not entitled to summary judgment on his disability discrimination claim.

---

[48] *Id.* at 811 (citations omitted, emphasis added).

IV.     CONCLUSION

For all of the reasons set forth above and in University Hospitals's Motion for Summary Judgment, Plaintiff's request for judgment as a matter of law should be denied and summary judgment granted in favor of University Hospitals on all of Plaintiff's claims.

Respectfully submitted,

*/s/ Rachael L. Israel*
Kerin Lyn Kaminski (0013522)
Rachael L. Israel (0072772)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:    216-621-5161
Facsimile:    216-621-2399
E-mail:    kkaminski@thinkgk.com
              risrael@thinkgk.com

***Counsel for Defendant University Hospitals Health Systems, Inc.***

## CERTIFICATE OF SERVICE

I certify that on May 18, 2020, a true and correct copy of this *Brief in Opposition to Plaintiff's Motion for Summary Judgment* was served via Electronic Mail, upon the following Parties:

Frank Dominic Dundee
7707 Amberwood Trail
Boardman, Ohio 44512
**Pro Se Plaintiff**

                                          */s/ Rachael L. Israel*
                                          Rachael L. Israel (0072772)
                                          **Counsel for Defendant University Hospitals Health Systems, Inc**